OWEN v. DEWEY.

1. LIBEL—PRIVILEGE.

The publication in a newspaper of a false charge of a criminal offense (*e. g.*, attempting to bribe a member of the legislature) is not privileged, so as to relieve the publisher from responsibility, although he had reason to believe the charge to be true, and acted in good faith.

2. SAME—EVIDENCE—MALICE—JUSTIFICATION.

In an action for newspaper libel, an alleged interview with plaintiff, published in another paper, and claimed by defendant to be the basis of the article in suit, is admissible to rebut the presumption of malice, but not to prove the truth of the publication.

3. SAME.

A publication libelous *per se* is presumed to be voluntary and malicious.

4. SAME.

In an action for libel, subsequent publications similar in character to that complained of are admissible upon the question of malice.

5. SAME.

In an action for libel in charging the commission of a crime, justification is established by a preponderance of evidence that the charge made is true; proof beyond a reasonable doubt is not necessary.

Error to Shiawassee; Newton, ·J.   Submitted October 25, 1895.   Decided November 5, 1895.

Case by George W. Owen against Edmund O. Dewey and James N. McBride for libel.   From a judgment for defendants, plaintiff brings error.   Reversed.

*James M. Goodell*, for appellant.

*William M. Kilpatrick* and *S. F. Smith*, for appellees.

McGRATH, C. J.   Action for libel.   Defendants gave notice that they would insist in their defense that the

material allegations in the article are true. Defendants are publishers of the Owosso Times, and plaintiff is the publisher of the Shiawassee American. On March 27, 1891, defendants published an article, in which they charged the plaintiff with an attempt to bribe a State Senator, by an offer of money. Defendants had judgment, and plaintiff appeals.

Defendants gave in evidence an article published in the Evening News of Detroit on March 23, 1891, and an article which appeared in the Owosso Times on March 27, 1891, in the column adjoining that in which the publication complained of appeared. The latter article contained the substance of the Evening News article. Counsel for plaintiff requested the court to instruct the jury as follows:

" The jury are instructed that the interview or article published in the Times in the column adjoining the article charged to be libelous is not to be regarded by them as any evidence whatever of the truth of the charge of attempted bribery. Such interview or article is no more nor less than hearsay, and, as such, should not be considered by the jury as in any way tending to establish the truth of the alleged libelous article upon which this action is based."

The court refused the request, but instructed the jury as follows:

" If you find that the language used in the alleged libelous article was intended to convey, and naturally would convey, to the reader, the understanding that the crime of bribery had been attempted to be committed, then, *per se* (that is, in itself), it would be actionable, and the plaintiff would be entitled to recover some damages, as already stated, unless the facts and circumstances of the case existing at the time show and satisfy you that the defendants, publishing a newspaper, did have the facts and circumstances before them, from the declaration and conduct of the plaintiff himself, and of Senator Wilcox, regarding the very subject of this libel, from which a careful, fair, prudent, cautious man would naturally and necessarily be induced to believe that bribery

was intended or attempted, and that the publishers published it, believing it to be true, and without malice, from justifiable motives, based upon the facts created by the plaintiff himself to the party to whom it is said the corrupt proposition was made, if you find one was made and submitted to him, and pressed upon him at different times. It was not the legal duty of the newspaper to inform the public of it, but it was a duty of imperfect obligation, growing out of society, its wants and its needs, such as every good citizen has imposed on him, for the good of all society, to give information and knowledge of crimes committed or attempted; and if, without malice, such information and knowledge is given to the public, if the facts are so related that they induce the mind to readily believe them, a newspaper or a private citizen would be justified in publishing what is known. Defendants may justify by proof of the facts, the conduct of the plaintiff, and it is called ' privileged;' but it would be perhaps more correct to say that it is a defense that can be made under the plea of the general issue, in which the acts, conduct, and declarations of the plaintiff may be shown concerning the subject-matter of the libel, and, if it be published in good faith, and without malice, defendants would be entitled to your verdict. If it fails to establish a full justification, it may still be considered as evidence in mitigation of damages, and the circumstances under which it was published must be borne in mind in determining the extent of any liability. If the plaintiff's own conduct and conversation induced the defendants to believe that he had attempted the bribery of Wilcox, the plaintiff could not complain.     *     *     *

"The plaintiff is a newspaper man, and had been engaged in the business of publishing a paper for several years, and knew and understood the object of the reporter of the News in interviewing him, and the Times paper was privileged in commenting as it did upon the conduct of Owen.     *     *     *

" If the conduct of the plaintiff in approaching Senator Wilcox, in regard to his senatorial action, was such as to lead Wilcox to understand he proposed a money consideration for him to act with the Republicans, or to influence his official action in any way, and the defendants published the article in question, believing the same to be true, from Wilcox's published statement and other pub-

lished statements of Owen's action, then the article is
privileged, and plaintiff cannot recover in this action.

"In all cases where persons have a common interest in
the subject-matter under discussion, or of the commu-
nication, and the person or persons to whom the commu-
nication is made have a corresponding interest, every such
communication, honestly made, in order to protect such
common interest, is privileged, by reason of the occasion,
and if the communication is made or published in good
faith, and without malice, it is a bar to an action for libel;
and in this case the facts and charges of which Mr. Owen
complains are of common and general public interest,
and of great importance to the public, and it was the duty
of the public newspaper to publish fully and fairly all
facts known in relation thereto coming from Owen and
Wilcox, and if you find that the defendants did only this
while acting in good faith, and without express malice,
then your verdict will be 'No cause of action.' * * *

"If Mr. Owen's conduct had been such as to lead an
ordinarily careful, prudent man to draw the same con-
clusion as was drawn in the article published, then plain-
tiff cannot recover, and your verdict should be for the
defendants."

The doctrine that the publication by a newspaper of
false and defamatory matter respecting an individual
may, by reason of public interest in the exposure of
wrong-doing and crime, be so far privileged as to relieve
the publisher from responsibility, or that it is a sufficient
answer, to an action based upon such publication, to
prove that the publisher had reason to believe the allega-
tions to be true, or that there was probable cause to be-
lieve them to be true, or that he, acting in good faith, sup-
posed them to be true, has not been recognized in this
State. On the contrary, it has repeatedly been held that
publishers, in this class of cases, must be held responsi-
ble for the truth of what is published.

In *Foster* v. *Scripps*, 39 Mich. 376, where plaintiff was
city physician, and the article referred to his conduct as
such, it was held that the article was not privileged. The
classes of privileged communications are there consid-
ered, and the court say:

" Allowing the most liberal rule as to the liability of persons in public employment to criticism for their conduct in which the public are interested, there certainly has never been any rule which subjected persons, public or private, to be falsely traduced. * * * There is no right to make untrue and injurious statements concerning others, when they are not made to persons having right and power to investigate, and in an honest attempt to invoke such investigation or answer such inquiry."

In *Bailey* v. *Kalamazoo Publishing Co.*, 40 Mich. 251, it was held that no man can lawfully destroy the reputation of a candidate for office by falsehood.

In *Peoples* v. *Detroit Post & Tribune Co.*, 54 Mich. 457, Mr. Justice SHERWOOD says:

" There can be no question at this late day but that the public newspaper has the right, whether it shall be regarded as its duty or not, to discuss those matters which relate to the life, habits, comfort, happiness, and welfare of the people. In doing so it may state facts, draw its own inferences, and give its own views upon the facts. It may err in its deductions, and, if they are false, they are not actionable, unless special damages can be shown; but false assertions, when they impute the commission of crime, are actionable, and, when not based upon any facts legally tending to prove the crime imputed, the publication cannot be said to be privileged."

In *Bronson* v. *Bruce*, 59 Mich. 467, plaintiff was a candidate for Congress, and the court held that a publication in a newspaper concerning a public officer, or a candidate for an elective office, which falsely imputes to him a crime, is not privileged by the occasion, either absolutely or qualifiedly.

In *Bourreseau* v. *Detroit Evening Journal Co.*, 63 Mich. 425, plaintiff was a deputy sheriff, and was charged with making unwarranted arrests for the sake of the fees. Defendant pleaded that the article was privileged. The court say:

" Nor can the article be said to be privileged. If untrue, the newspaper must be responsible for the damage

done by its publication. The reputation of a public officer cannot be destroyed or damaged by false imputations upon his morality or his honesty, without redress. It serves no useful purpose to the community, who are interested, to falsely blacken the character of a public official, or to destroy the confidence of the people in his integrity."

In *Wheaton* v. *Beecher*, 66 Mich. 310, it was held that publications of the truth in regard to a candidate for office are not libelous, and that it is equally true that the publication of falsehood against such candidate is wrong, and deserves to be punished. In *Randall* v. *Evening News Association*, 79 Mich. 266, the publication was of and concerning a representative in the State Legislature. See, also, *Belknap* v. *Ball*, 83 Mich. 583; *Thibault* v. *Sessions*, 101 Mich. 279.

The occasion, the circumstances of the publication, honesty of purpose, good faith, the sources of information, and the reliability of such sources, and belief in the truth of the allegations made, may be shown to rebut the presumption of malice, which otherwise obtains, and reduce the damages, but not as substantive proof of the truth. *Bronson* v. *Bruce*, *supra; Bailey* v. *Kalamazoo Publishing Co.*, *supra; Belknap* v. *Ball*, *supra.* Every justification must stand on facts, and not on opinions or hearsay. *Atkinson* v. *Detroit Free Press Co.*, 46 Mich. 341, 353; *Wheaton* v. *Beecher*, 79 Mich. 443. In *Whittemore* v. *Weiss*, 33 Mich. 353, Mr. Justice COOLEY says:

" The judge charged the jury that malice is to be presumed from the publication and its falsity; that, to rebut this presumption, defendants must prove that they made the publication in good faith, believing it to be true in all its essential parts, and for a proper purpose. Defendants insist that the purpose is immaterial, if they believed what they published, and made the publication in good faith. This might be so if the publication had been true, but good faith cannot protect a false publication, nor can one excuse himself for making a mistaken assault upon his neighbor's reputation by showing the absence of malice, when, even had his charge been true, there was

no proper purpose in bringing the matter to public notice."

The court erred in the instructions given upon the subjects referred to. Plaintiff was entitled to the request asked for. The instruction that " a publication that is libelous *per se* is presumed to be voluntary, and with malicious motive," was correct; but the court was in error in the instruction that " the communication in question is of such a nature, and so far privileged, that no malice can be implied from the nature of the communication." The question of malice was, under the facts presented, a question for the jury, and the subsequent publications were admissible as bearing upon that question. The fact that an alleged interview with Owen was published in the Evening News did not warrant the assumption by defendants that the statements there alleged to have been made by Owen were actually made by him. It was for the jury to say whether the statements alleged to have been made by Owen were correctly reported, and, as between Owen and Wilcox, which was to be believed, and whether the statements admitted to have been made by Owen, or alleged by Wilcox to have been made to him, and believed by the jury to have been so made, were a sufficient foundation for the charge. If the jury believed that the statements admitted by Owen on the trial to have been made by him to Wilcox, or that Owen's statements to Britton, as published in the Evening News, were correctly reported in that publication, or that Wilcox told the truth in his interviews and testimony, and that either warranted the charge made, then plaintiff could not recover. The old rule that the proof must be such as would authorize the conviction of the plaintiff if on trial for the offense, and that he is, in such case, entitled to the benefit of every reasonable doubt, no longer obtains in this class of cases. It is sufficient if the jury find, from a preponderance of evidence, that the charge made was true.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.