BUCKSTAFF, Respondent, vs. HICKS, Appellant.

*September 5 — September 22, 1896.*

*Libel: Privilege: Proceedings of city council: Communication made to persons interested: Excessive publication: Damages: Instructions.*

1. A mere voluntary report, published as an item of news, of the proceedings at a city council meeting is not privileged, even when published in the official city paper.

Buckstaff vs. Hicks.

2. An explanation, given at a meeting of the city council by the city's representative in the state assembly, as to why certain amendments to the city charter proposed by the city council had not been acted upon in the state senate, which explanation contained statements reflecting upon the representative of the city in the senate, is not a communication whose voluntary publication as a matter of news is privileged, where the newspaper publishing it circulates outside of the city and the senatorial district.

3. Actual or compensatory damages for a libel cannot be mitigated by circumstances showing good faith.

4. In an action for libel a charge that, in assessing damages, the jury were to consider the plaintiff's injured feelings and tarnished reputation, "taking into account the nature of the imputation, the extent of its publicity, the character, *condition*, and influence of the parties, and all surrounding circumstances," did not authorize the jury to consider the *wealth* of the defendant, since the word "condition" would naturally be understood as referring rather to social standing.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This is an action of libel, brought by plaintiff for an alleged libelous article printed in the Oshkosh Northwestern, March 19, 1889, of which paper defendant was publisher and proprietor. At the time of said publication, the plaintiff was state senator from the Nineteenth senatorial district, which comprised the city of Oshkosh and a large portion of the county of Winnebago. The legislature was at that time in session, and there were pending certain amendments to the charter of the city of Oshkosh. One George W. Pratt represented at that time the city of Oshkosh in the assembly. On the 18th of March, 1889, a public meeting was held at the council rooms in the city of Oshkosh, at which meeting the mayor and aldermen of the city were present, and also a number of citizens, and, among them, Assemblyman Pratt. At this meeting some consideration was given to the charter amendments pending in the legislature, and Mr. Pratt was called upon and made some re-

marks. Upon the following day, the defendant's news-paper published a report of said meeting, which was written by one of its reporters, and which contained the following paragraphs, which are the paragraphs claimed to be libel-ous in this action:

"When amendments had been disposed of, Assembly-man Pratt, who was present, was asked to give his opinion of the charter.

"Mr. Pratt began by explaining the delay in the consid-eration of the charter bill by saying that he had been un-justly censured by the press, but he didn't care anything about that; he was used to it. It was his desire to secure the passage of the charter just as it came from the council, and he should do all in his power to have that done, though he was in the minority. He said the council had been shamefully treated by Senator *Buckstaff* and Mr. Schmidt, and advised the council to take a dignified stand in the matter, and, if the charter bill was killed, let the responsi-bility for it fall where it belonged. It was a bad state of affairs when a man like Senator *Buckstaff*, who was four fifths of his time in a state of intoxication, could dictate to the common council what the charter amendments should be."

The defense was substantially that the publication was privileged. It appeared upon the trial that the newspaper in question circulated to a considerable extent outside of the city of Oshkosh. There was a conflict in the evidence as to the character of the meeting at which Mr. Pratt made his remarks, and also as to whether Mr. Pratt made any re-marks involving the charge of intoxication. On the part of the plaintiff, the evidence tended to show that the meeting in question was a public meeting, which the mayor and council attended as citizens only; while on the part of the defendant there was evidence tending to show that it was a regular meeting of the mayor and common council, at which

citizens were present. Some of the witnesses testified that Mr. Pratt made substantially the remarks attributed to him in the article in question, while others testified that he did not. It appeared that there was no record of any such meeting in the official records of the council proceedings of the city of Oshkosh.

The court charged the jury to the effect that that part of the article which charged Senator *Buckstaff* with intoxication was libelous, and that the only question for them to determine was the amount of plaintiff's damages. The following proposed instructions were refused by the court, and exceptions taken:

"If the jury believes that the report of the meeting of the common council held on the 18th day of March, 1889, at which George W. Pratt made an address, was fair and accurate, it is *prima facie* privileged, and your verdict should be for the defendant; there being no proof that it was published maliciously, being published solely to afford information to the public for the benefit of society, without reference to individual's concern, and there being no proof of malicious publication.

"The jury are further instructed that if the said published report of the said meeting of the common council was a fair and accurate account and report of what occurred at said meeting, and of what Pratt said, and language used by him concerning plaintiff at such meeting, while it will not avail as a defense, the jury may consider such facts and circumstances to mitigate the plaintiff's damages, if you find he sustains any by such publication."

The jury returned a verdict for the plaintiff, and assessed the damages at $1,250; and, upon motion for a new trial, the court ordered a new trial unless the plaintiff remitted the sum of $750 from the verdict. The plaintiff having remitted said sum, judgment for $500 and costs was rendered in favor of plaintiff, and defendant appealed.

For the appellant there was a brief by *Hume, Oellerich & Jackson*, and oral argument by *John W. Hume*. They contended, *inter alia*, that the occasion upon which the report was published was one of qualified privilege, and that, in the absence of so-called express malice, the defendant is not liable in damages for the publication. *Wason v. Walter*, L. R. 4 Q. B. 92; *White v. Nicholls*, 3 How. 266; *Kelly v. Tinling*, L. R. 1 Q. B. 699; *Henwood v. Harrison*, L. R. 7 C. P. 606; *Davis v. Duncan*, L. R. 9 C. P. 396; *Davison v. Duncan*, 7 El. & B. 229; *Palmer v. Concord*, 48 N. H. 211; *Marks v. Baker*, 28 Minn. 162; *Smith v. Higgins*, 16 Gray, 251; *Press Co. v. Stewart*, 119 Pa. St. 584; *Miner v. Detroit Post & Tribune Co.* 49 Mich. 358; *Conroy v. Pittsburgh Times*, 11 L. R. A. 725; *Boehmer v. Detroit Free Press Co.* 94 Mich. 7; *Eviston v. Cramer*, 47 Wis. 659; Cooley, Torts, 217, 218; Newell, Defamation, S. & L. 542, § 144; Odgers, Libel & S. 46; *Cox v. Feeney*, 4 Fost. & F. 13; Townshend, Slander & L. 300, 445 and note 3.

For the respondent there were briefs by *F. W. Houghton*, attorney, and a separate brief by *Bouck & Hilton*, of counsel, and oral argument by *Mr. Houghton.*

Winslow, J. The publication complained of was libelous if not privileged, and this is the controlling question on this appeal. A verdict for the plaintiff was directed; hence it must be assumed that Assemblyman Pratt actually made the remarks attributed to him, and that he made them at a meeting of the common council, there being competent evidence before the jury tending to prove both of these facts. Proceeding upon this assumption, the question whether the publication of the defamatory words was privileged will be considered.

The proceedings of legislative bodies, of courts, and of military and naval tribunals are privileged. In these cases the privilege is said to be absolute, and, though this may

not be strictly accurate, it is unnecessary at present to
discuss the question, because the publication in issue does
not fall within this class.  The second class of privileged
publications or communications is said to be condition-
ally privileged from the fact that the privilege depends
upon the good faith of the party making the defamatory
publication.  Cases of conditional or qualified privilege may
be divided into three general classes, viz:  (1) Fair reports
of the proceedings of courts and legislative bodies; (2) where
the defendant, in good faith, in the performance of a duty,
makes a communication to another to whom he owes the
duty; (3) where one who has an interest in the subject
makes a communication relating thereto to another having
a corresponding interest.

It is certain that the publication in question is not the re-
port of the proceedings of a court or legislative body.  The
term "legislative body," in this connection, has not been
extended to cover a city council meeting.  Newell, Defama-
tion, S. & L. 559; Odgers, Libel & S. 260.  Doubtless, an
official report of a city council meeting required to be pub-
lished by law in the official city paper would be privileged;
but that is not the present case.  The report before us was
not an official report.  No official report of the meeting was
ever made or published.  The article in question was a
mere voluntary report, published as an item of news; hence
it cannot be protected as an official report of a council
meeting probably would be, nor does the fact that the news-
paper was in fact the official paper of the city cut any
figure.

The publication, then, not being privileged as a report of
the proceedings of a legislative or judicial body, the ques-
tion arises whether it falls under either of the other two
classes of publications above named which are entitled to a
qualified or conditional privilege.  The cardinal principle
with reference to these last-named publications or communi-

cations is that they must be made in good faith, by one who owes a duty or has an interest in the subject matter, *to one to whom the duty is owing, or to one who has a corresponding interest.* Now, as to the original communication made, or claimed to have been made, by Mr. Pratt to the common council, it might plausibly be claimed under the foregoing definitions that, if made in good faith by him believing it to be true, it was privileged. The council had proposed certain amendments to the city charter, and sent them to the legislature for action; and Mr. Pratt was explaining to the council the reason, as he understood it, why they failed to be acted upon by the senate. It can easily be seen that the argument in favor of the privilege in such a case would be worthy of very serious consideration. But the publication of those remarks to the world is an entirely different matter. The remarks were made by the city's representative in the assembly to the city's representatives in the council, purporting to give information as to the conduct of the representative of the city in the senate with reference to the passage of charter amendments. Now, conceding that such remarks made in good faith were privileged, the privilege did not extend to their publication to the world. Mr. Pratt could not have had his remarks printed and circulated over the state or in adjoining counties, and take refuge behind the fact that he first communicated them to the council, and that such communication was privileged, and hence that the privilege attached to a republication of them to the world. The evidence showed that the newspaper in question circulated in adjoining counties and cities outside of the county of Winnebago, and outside of the plaintiff's senatorial district. To claim that there was any duty, public or private, resting on the defendant to publish such a charge against the plaintiff in these localities, is to demonstrate the absurdity of the claim. There was not only no duty, but there was certainly no tangible

interest in the subject matter on the part of the people out-
side of the plaintiff's district.   Thus, it is very plainly seen
that the publication, even if it could be considered as privi-
leged when made to a citizen of Oshkosh who might be said
to be interested in the subject matter, could not be made
broadcast to the world and preserve its privileged char-
acter.   The publication is excessive.   It must be confined
to people to whom the defendant owes a duty to speak, or
who have an interest with the defendant in the subject mat-
ter.   *Rude v. Nass*, 79 Wis. 321.

There are two minor questions raised.   An instruction
was asked to the effect that, if the article published was a
fair and accurate account of Mr. Pratt's remarks, this fact
might be considered in mitigation of plaintiff's damages.
This instruction was refused, and error is claimed.   The
ruling was correct.   The plaintiff had abandoned all claim
for punitory damages, and the circuit judge had so in-
structed the jury; hence there could be no recovery save for
actual or compensatory damages.   These cannot be miti-
gated by circumstances showing good faith.   *Grace v. Demp-
sey*, 75 Wis. 313.

The circuit judge charged the jury that, in estimating
damages, they were to consider the plaintiff's injured feel-
ings and tarnished reputation, " taking into account the
nature of the imputation, the extent of its publicity, the
*character, condition*, and influence of the parties, and all
the surrounding circumstances."   It is said that the word
" condition," in this sentence, must mean " wealth," and
hence that the jury were charged that, in estimating com-
pensatory damages, they might consider the wealth of the
defendant.   This would undoubtedly be error if such were
the legitimate and natural construction of the word, but we
do not think it would naturally be so understood.   We con-
strue it as referring to social standing, and think it must
have been so understood by the jury.

*By the Court.*— Judgment affirmed.