BEE PUBLISHING COMPANY ET AL. v. GEORGE W. SHIELDS.*

FILED APRIL 30, 1903.   No. 12,502.

1. **Libel:** LIBERTY OF PRESS. The liberty of the press is no more sacred than the liberty of speech; what a man may write with impunity he may speak with impunity.

2. **Privilege.** An occasion of privilege will not justify false and groundless imputations of wicked motives or of crime against public officials in the performance of their duty.

3. **Liberty of Press:** LIMITATION. While the conduct of such officials is open to criticism, a line must be drawn between hostile criticism upon public conduct and the imputation of bad motives or of criminal offenses to officials.

4. **Malice:** EVIDENCE. In an action for libel, evidence of other publications in the same paper containing substantially the same imputation as that sued upon, whether made before or after the latter, or even after suit brought, may be admitted in evidence for the purpose of proving malice in the publication sued on.

5. **Damage:** EVIDENCE. Evidence of the extensive circulation of a paper, in which an alleged libel is published, may be admitted for the purpose of showing the extent of the injury.

6. **Exclusion of Evidence.** Action of the trial court in excluding evidence examined, and approved.

* Rehearing denied. See opinion, p. 759, *post*.

7. **Construction of Language of Article: QUESTION FOR JURY.** *Held,*
   Proper to submit to the jury whether or not the language con-
   tained in the article sued upon, when fairly construed, amounted
   to a charge of bribery and malfeasance in office against the
   plaintiff.

8. **Instructions:** Instructions examined, and *held* favorable to the
   plaintiff in error.

9. **Damages:** Amount of damages awarded *held* not excessive.

ERROR to the district court for Douglas county: WILL-
IAM W. KEYSOR, DISTRICT JUDGE. *Affirmed.*

*Edward W. Simeral* and *W. J. Connell,* for plaintiffs in
error.

*William F. Gurley* and *Ed P. Smith, contra.*

OLDHAM, C.

On the 7th day of April, 1899, there appeared as an
editorial in the *Omaha Evening Bee,* the following article:
"It is announced by the official organ of the gamblers'
gang that County Attorney Shields has complaints sup-
ported by irrefutable evidence that would convict some
sixty owners of gambling devices who have been operating
in South Omaha, but that he will not prosecute the crim-
inals on condition that they offend no more.  Is this not
a beautiful state of affairs for a reform county attorney?
It is reliably stated that the evidence has been at hand for
weeks, that protected gambling was going on unmolested
in South Omaha, but the county attorney would not inter-
fere until after election, out of apprehension that he might
injure the chance of popocratic candidates.  Now he openly
proposes to pigeonhole the complaints and the evidence in
deference to the interests of the gang.  If, as is commonly
reported, the South Omaha gamblers had to put up liber-
ally for protection to run, how much have they had to put
up to secure immunity from prosecution by Mr. Shields?"
     The same article reappeared in both the morning and
evening editions of the *Bee* of April 8,  Shortly thereafter

a suit for libel was commenced by the plaintiff in the lower court against the Bee Publishing Company, and Edward Rosewater and Victor Rosewater, editors of the *Bee*, on account of the publication of this article. An answer was filed to plaintiff's petition by the several defendants, in which they admitted the publication of the article, but alleged, in substance, that it was a privileged communication, published in good faith and without malice. The answer failed to allege that the charges contained in the publication were true. After the evidence had been taken in the case, the suit was dismissed as to Edward Rosewater, and a verdict was returned by the jury in favor of plaintiff and against the other defendants in the sum of $2,500. There was judgment on the verdict, and defendants bring error to this court.

The first question with which we are confronted is as to the character of the article sued on; whether it is a strictly privileged communication, a communication of qualified privilege, or whether it is libelous *per se*. The court below treated the article as a publication of qualified privilege, and cast the burden upon the plaintiff of showing express malice; and for this purpose admitted in evidence subsequent publications contained in the same paper, referring back to the article in issue for the purpose of showing malice in the original publication. To this ruling complaint is made in the brief of plaintiffs in error; their contention being that the article is one of absolute privilege, and that the subsequent articles referring back to it were likewise privileged and, consequently, not admissible in evidence for the purpose of showing malice.

In the law of libel and slander there is clearly recognized two classes of privileged communications. One class is absolutely privileged and can not be made the foundation of an action for libel or slander. Of this class is a communication between attorney and client, husband and wife, parent and child, physician and patient, priest and confessor, and those necessarily occupying such a confidential relation to each other that public policy demands that the

communications between them, while such relation exists, be held absolutely sacred. This privilege is protected; not on account of the contents of the communication, but on account of the relation existing between the parties between whom the communications pass. *Vogel v. Gruaz,* 110 U. S. 311. We think it is apparent that no such confidential relationship exists between the publishers of a newspaper and its numerous readers as to grant absolute immunity for anything that may be published in its columns. In fact counsel for plaintiffs in error do not rest their contention on the ground of a confidential relationship existing between the publishers of the paper and the reading public in general, but rather on the ground that the editorial complained of was a legitimate criticism of the conduct of a public officer in the discharge of his duties, and as such it was a proper exercise of the liberty of the press.

It is declared in section 5, article 1, constitution of Nebraska:

"Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that liberty; and in all trials for libel, both civil and criminal, the truth when published with good motives, and for justifiable ends, shall be a sufficent defense."

It is well to notice that the liberty of speech and press are guaranteed alike in this section of the bill of rights; that which a man may write with impunity, he may speak with impunity; what may be published in the columns of a newspaper may be proclaimed from the hustings, the pulpit, or the lecture platform; that the liberty of the press is and should be no more sacred than the liberty of speech. While the liberty of each is a sacred right dear to the hearts of an entire Anglo-Saxon civilization, yet the lawmakers and the framers of constitutions have all realized that liberty in the exercise of any natural right when unrestrained by law leads to licentiousness, and have therefore wisely provided that any one exercising the liberty of speech or of the press within this state shall be held re-

52

sponsible for an abuse of such privilege. It is unquestionably the right of the press to freely discuss, criticise or comment fairly upon the acts or omissions of a public officer of the county, state or nation; but it is not permitted, under the guise of criticising official acts, to maliciously defame the character of an official. The rule with reference to this right is well defined by the supreme court of Pennsylvania, in the case of *Neeb v. Hope,* 111 Pa. St. 145, when it says:

"An occasion of privilege will not justify false and groundless imputations of wicked motives or of crime. The conduct of public officers is open to criticism, and it is for the interest of society that their acts may be freely published with fitting comments and strictures. But a line must be drawn between hostile criticism upon public conduct and the imputation of bad motives, or of criminal offenses, where such motives or offences can not be justly and reasonably inferred from the the conduct."

If, then, we treat the article in controversy as one of special privilege, because of the fact that it was a comment upon the acts of a public official, it was still actionable, unless true and published with good motives and for justifiable ends. As before stated, the court below was of the opinion that the article was privileged to such an extent as to require the plaintiff to show malice in its publication, and for this purpose admitted subsequent articles immediately following the publication sued upon and referring back to, and, in fact, reiterating the charges contained in the original article. This evidence was all confined by instructions merely to the purpose of showing malice in the original publication. In *Gribble v. Pioneer Press Co.,* 34 Minn. 342, the rule is announced:

"In an action for publishing a libel upon a plaintiff, evidence of other publications by defendant containing substantially the same imputation as sued upon, whether made before or after the latter, or even after suit brought upon it, may be admitted in evidence for the purpose of proving actual malice in the publication prosecuted for."

This rule is supported by the holdings in *Commonwealth v. Damon*, 136 Mass. 441; *Chamberlin v. Vance*, 51 Cal. 75; *Symonds v. Carter*, 32 N. H. 458; *McCleneghan v. Reid*, 34 Neb. 472; and is also laid down in Starkie, Slander and Libel, secs. 587-589.

The next complaint urged is as to the action of the trial court in admitting evidence as to the extensive circulation of the paper in which the alleged libel was published in this and other states. Testimony of this kind, however, has universally been held to be proper, at least for the purpose of tending to show the injury that may follow from the extent of the publication. For this purpose it was held proper by this court in the case of *Rosewater v. Hoffman*, 24 Neb. 222, 230. It has also been held proper in other states for the purpose of taking away the alleged privilege of criticising a public official within his jurisdiction to show that the circulation of the paper extended beyond the territory in which the official act is committed. *Buckstaff v. Hicks*, 94 Wis. 34; *State v. Haskins*, 109 Ia. 656, 47 L. R. A. 223.

Complaint is next made of the action of the trial court in excluding a communication written by plaintiff in answer to the charges made against him in the article in controversy, and published in the *World-Herald* on May 12, 1899, more than a month after the alleged libel was printed, and after suit had been instituted in this case. The authorship of the letter was proved in the cross-examination of plaintiff, and it was offered for the alleged purpose of showing plaintiff's feeling toward the editors of the *Omaha Bee*. We think the court was right in excluding it. When asked the question as to his feelings toward one of the editors, the witness answered that his feelings were very hostile; the cause was dismissed as to the other editor, so that the question of his feelings toward the latter are immaterial even if this was a proper method of proving such fact.

It is complained by plaintiffs in error that the instructions as a whole were unfavorable in spirit and contents

to them, and special criticisms are directed against certain paragraphs thereof. As before stated, the instructions were all based on the theory that the editorial in controversy was a communication of qualified privilege; and after stating the issues arising on the pleadings, the court told the jury, in substance, that the burden was upon the plaintiff to show that the publication was made maliciously. The court then defines libel in a manner approved by the authorities and not complained of by plaintiffs in error, and tells the jury that a publication is privileged when the author is so situated that it is his duty to the interests of society, morality or good government to communicate the matters contained, and when he does "so in good faith without actual malice." The court then says that one must not take advantage of a privileged occasion to exhibit malice toward and to unlawfully and wrongfully injure another by publishing false and defamatory matter concerning him, and that if he does so he forfeits the privileged occasion and becomes a libeler subject to the ordinary rules of law relating thereto. In the following paragraph of the instructions the court said:

"The publication of the article set forth in the petition is admitted, and, if the matters therein contained were true, the public had an interest in knowing them, and it was the duty of the defendant to publish them. The occasion of the publication of the article set out in the plaintiff's petition was therefore a privileged one, and the article aforesaid was so far a privileged communication that, in order to recover in this action, the plaintiff must prove by a preponderance of the evidence that the defendants made said publication with actual malice toward him."

This paragraph is criticised by counsel, because they say it seems to insinuate that it would be necessary for them to show that the article was true in order to justify its publication. This is not a legitimate inference from the instruction, because it closes by telling the jury that the plaintiff must prove by a preponderance of the evidence that the defendant had made such publication with actual

malice toward him. This instruction was certainly exceedingly favorable to defendants, and it is not reproduced here for the purpose of commending it as properly declaring the law in cases of this nature, but merely for the purpose of showing that plaintiffs in error are not the party to this controversy that should complain of it.

The next paragraph is criticised because it told the jury that:

"* * * in determining whether or not the defendants were moved by actual malice in making the publication complained of, the jury should examine the original and subsequent publications received in evidence, consider the nature of the charges, the extent of the publicity given them, their truth or falsity, whether or not the defendants had reasonable grounds for believing and did believe them to be true, and any and all other facts and circumstances proven on the trial which show or tend to show the attitude of the minds of the defendants toward the plaintiff in making the publication in controversy."

The criticism rests on the theory that subsequent publications should not have been admitted in evidence; a question which has already been fully disposed of in this opinion.

Complaint is also made because the trial court permitted the jury to determine whether or not the article sued on, when fairly construed in its ordinary meaning, charged the plaintiff with the crime of bribery and malfeasance in office. Each of the offenses were properly defined by the court, and we see no error in permitting the jury to find from the testimony whether a fair and reasonable construction of the language in the article contained a charge of either or both of these offenses against the plaintiff.

It will be noticed that the language of the article is not, as contended by counsel for plaintiffs in error, a mere expression of an opinion as to the disposition of a public officer toward the matter concerning which he is criticised. The article says that it is reliably stated that "protected gambling was going on unmolested in South Omaha, but

the county attorney would not interfere until after election, out of apprehension that he might injure the chance of popocratic candidates." To repeat or publish a slanderous or libelous communication is to indorse it as genuine, so that when this alleged "reliable" statement was published in defendants' paper, the names of the defendants were in law written across the back of the publication as an indorsement of the truth of the charge contained therein.

It will be noticed that the editorial also contained this statement:

"If, as is commonly reported, the South Omaha gamblers had to put up liberally for protection to run, how much have they had to put up to secure immunity from prosecution by Mr. Shields?"

This is not an expression of an opinion that at some future time the gamblers might contemplate paying money to the county attorney for the privilege of protection, but the language can, by reasonable innuendo, be construed to charge that the gamblers had already paid money to the county attorney for protection against prosecution, and if it does so it certainly amounted to a charge of bribery, as defined by our Criminal Code.

It is finally contended that the verdict in the case is excessive; that, at most, plaintiff should only have been awarded nominal damages for the publication complained of.

It was said by this court in the recent case of *Williams v. Fuller, ante,* p. 354, that:

"Where the publication is libelous *per se,* the plaintiff is not required to introduce evidence of actual damage to entitle him to substantial damages."

The jury was properly instructed against allowing anything by way of vindictive or punitive damages. This case has been tried twice to a jury; the first time a larger *quantum* of damages was awarded, so that we do not feel that we would be justified in saying that the amount of the verdict was necessarily the result of prejudice and passion.

It is, therefore, recommended that the judgment of the district court be affirmed.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed May 18, 1904. *Rehearing denied:*

POUND, C.

This is a case to which we gave a great deal of time and attention. We thought at the time and still think that the questions upon which counsel for plaintiffs in error strenuously endeavor to procure a ruling are many of them entirely outside of the case. It is stated in the opening of the brief that this case involves:

"Some of the most important legal questions that can be submitted to a judicial tribunal, viz.: The right of the press to discuss and criticise the action of a public officer, and upon the part of that officer his right to refrain from the performance of those duties imposed on him by law."

The newspaper article complained of, by reason of which counsel thinks the power of a newspaper to criticise a public officer is involved, charges the defendant in error with two crimes, namely, bribery and malfeasance in office. That this is so two extracts from the article will readily demonstrate. The concluding words are as follows: "How much have they had to put up to secure immunity from prosecution by Mr. Shields?" In another place in the article is the following statement:

"It is reliably stated that the evidence has been on hand for weeks that protected gambling was going on unmolested in South Omaha, but the county attorney would not interfere until after election out of apprehension that he might injure the chances of popocratic candidates."

Obviously this is not criticism but on the contrary is a libelous charge of bribery and malfeasance in office. It does not say that the county attorney has not prosecuted certain gamblers when he ought to do so, but it says that he has failed to do so for political reasons and because money has been "put up to secure immunity from prosecution."

The distinction between criticism of the acts of a public officer and false and ungrounded charges of criminality is well established. Criticism is always proper, whether by individuals or by newspapers. Newspapers have no monopoly of the right of criticism; nor are their rights in this respect any broader than those of the community in general. *Negley v. Farrow*, 60 Md. 158. In Townshend, Slander and Libel, sec. 254, the learned author, after stating that official acts of public functionaries may be freely criticised, adds that the occasion "will not excuse an aspersive attack upon the character and motive of the officer. To excuse such attack, the truth of the utterances must be shown." In support of this doctrine he cites *Hamilton v. Eno*, 81 N. Y. 116. Indeed the reports are full of this distinction. In addition to this case I may call attention to *Hallam v. Post Publishing Co.*, 59 Fed. 530, affirming 55 Fed. 456; *Owen v. Dewey*, 107 Mich. 67, 65 N. W. 8; *Hay v. Reid*, 85 Mich. 296, 48 N. W. 507; *Cotulla v. Kerr*, 74 Tex. 89, 11 S. W. 1058; *Rowand v. De Camp*, 96 Pa. St. 493. In *Hallam v. Post Publishing Co.* the court say that a defense of privilege is confined to comment and criticism, and does not extend to false assertions of fact. It will not do to say that the article in question does not come within this rule because it sets forth that the facts charged are reliably stated. A repetition of rumors in such cases, without investigation of their truth, is not privileged. *Burke v. Mascarich*, 81 Cal. 302, 22 Pac. 673; *Upton v. Hume*, 24 Ore. 420, 33 Pac. 810.

The first ground upon which a rehearing is asked is the refusal of the trial court to give an instruction requested by the plaintiffs in error with respect to the extent of the

circulation of the newspaper. Counsel's argument upon this point is based upon a misapprehension of what the trial court charged the jury. The jury were instructed that in passing upon the question of malice they might consider "the extent of publicity" given to the libel. The article in question was published three times successively —in an evening edition and in the morning and evening editions of the next day. This carrying over of the article from the evening edition of one day to the evening edition of the next has much appearance of being a malicious repetition in order to give greater publicity to the article, and it was to this that the trial court properly directed the attention of the jury. The question of the circulation of the paper bore only upon the amount of damage. No one claimed that extra copies of the paper had been circulated, but only that the libelous article had been given undue repetition. In addition to these three publications, for a considerable time thereafter the paper continued to call attention to the article from day to day by various references and short paragraphs.

It is next claimed that we erred in holding that these subsequent publications were receivable for the purpose of proving malice, for the reason that they were not libelous *per se*. The cases cited by counsel on this point are not applicable since they present quite a different state of facts. In this case the subsequent publications referred to the charge already made, were plainly intended to have the effect of repetition, and must have had that effect upon all who read them. The third objection is that the eighth instruction of the trial court was erroneous, first, in that it did not instruct the jury that the county attorney had no right to refuse to prosecute upon the advice of the police officers of South Omaha, and, second, because the article in question was wrongfully assumed to charge malfeasance in office. The trial court told the jury expressly that the county attorney had no right or discretion "to refuse to prosecute criminal offenders in deference to the interest of candidates for office in an election campaign,

or in deference to the interests of any kind of a gang, be it political or for the protection of gambling." Shields claimed that he consulted the municipal police officers and upon their advice made up his mind that the best method of suppressing gambling was to take another course and hence did not file the complaints he had drawn up. The county attorney, under the present practice, has at least some part of the discretion which formerly resided in the grand jury. If the municipal authorities advise him not to put the county to the expense of prosecution in a particular case and he finds in good faith that the criminal practices in question have ceased and can be prevented by the action of the municipal authorities in the future, in our opinion he exercises his discretion properly by acting on such advice. Hence we do not think that the plaintiff in error was entitled to an instruction beyond what was given by the court. Moreover, the charge in the article in question was that he refused to prosecute for political reasons and in the interests of candidates for offices, and not that he unwisely exercised a discretion not reposed in him by the law. As to the second objection to the instruction, we need only quote the language of the article itself: "Now he openly proposes to pigeonhole the complaints and the evidence *in deference to the interests of the gang.*" The latter portion of this statement is clearly not criticism but a charge of misuse of his official position for political purposes. It is not an opinion. The article does not say that the author believes such is his reason, nor does he say that the circumstances are such as would create a just suspicion that the reason given may be his real motive. He states emphatically as a matter of fact that such is the reason and motive of the officer's action.

Finally, it is claimed that the verdict is excessive. Two juries under careful instructions have awarded large sums in this case. We have no doubt that another jury would bring in an equally large verdict. The evidence shows that Mr. Shields had for many years enjoyed the confidence and respect of the community, had been elected to office several

times and was a member of a profession in which a reputation for honesty and integrity is essential. In view of the character of the charges made against him, the great publicity given to them, and the well known influence of the paper which made them, we are unable to think any case is presented for a reduction of the damages given by the jury.

We therefore recommend that the motion for rehearing be overruled.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the motion for rehearing is overruled.

REHEARING DENIED.

SEDGWICK, J., dissenting.

Upon the trial, evidence was admitted as to the extent of the circulation of the *Bee* and the number of its subscribers, not only in Nebraska, but in other states, for the purpose of proving actual malice on the part of the defendant; and in the instructions the court told the jury that in determining whether or not the defendant was moved by actual malice the jury should consider "the extent of the publicity given." The defendant requested the following instruction:

"You are instructed that the fact that the *Bee* circulated outside of Douglas county and state of Nebraska would not deprive the article sued upon of its privileged character unless you further find from the evidence that the defendants maliciously and unnecessarily gave said article a wide circulation for the purpose of injuring the plaintiff. But the usual and ordinary circulation of the *Bee* to its regular subscribers outside of this county and state in the ordinary course of business would not be evidence of express malice toward the plaintiff."

This request was refused. I think the court should

have given this instruction. It is suggested that there was evidence that the articles in question were published in several editions of the *Bee,* and were also commented upon in subsequent editorials, and that it was to the publicity so given that the instruction given by the court was directed. It seems quite probable from the condition of the record that this was the view taken by the trial court. The jury, however, was nowhere told that this was the meaning of the court, and in the condition of the evidence the instruction given by the court might as readily be applied to the circulation of the paper in other states as to the successive publications, so that there was danger that the jury might understand that in determining the question of malice they might take into consideration the fact that the paper in its regular circulation was sent into other states. This, of course, is not the law, and the defendant was entitled upon request to have the jury plainly instructed upon this question. The instruction requested seems to be a proper one and should have been given to the jury.

It is not necessary to call attention to other matters in this record. The whole case has been exhaustively considered by the court, and as the majority are entirely satisfied that no different result would be reached if a rehearing was granted, I do not deem it advisable to insist upon such rehearing.