DORN and MCGINTY ET AL. v. COOPER ET AL.

**Slander and Libel:** MALICE: EVIDENCE.  Defendant published an al-
leged libelous article charging the existence of a pool in the
local hog market and a lower price at that place than at other
specified markets near by on a certain date.  Plaintiff in a libel
action therefor undertook to show the market price at the
places named on that date for the purpose of establishing actual
malice.  *Held,* that defendant was entitled to show in rebuttal
the local market and what he was told regarding the prices paid
at that time, and that he did not know that plaintiffs were en-
gaged in the hog business.

**Evidence:** ORDER OF INTRODUCTION: EXCLUSION.  The court may per-
mit the introduction of evidence out of order on the statement
of counsel that its relevancy will be made to appear later, but
if this is not done and it thereafter appears inadmissible, a mo-
tion to strike it from the record is re quired to secure its exclu-
sion.

**Libel:** DAMAGES: EVIDENCE.  General good or ill-will entertained by
a defendant toward a plaintiff prior to the publication of al-
leged libelous matter, cannot be shown to mitigate or to enhance
the damages.

**Same.**  Where defendant in a libel suit professed to speak of his
own knowledge, evidence that he gained his information from
others should not be considered in mitigation of actual damages,
it is only admissible on the question of malice.

**Same.**  A lack of knowledge that plaintiff was engaged in the busi-
ness toward which the libelous publication was directed is not
admissible in mitigation of damages.

**Nominal damages:** INSTRUCTION.  Where an award of nominal dam-
ages in a sum less than six dollars, the amount defendant of-
fered to confess judgment for, would not carry the costs with
it, an instruction that nominal damages were awarded where no
actual injury had resulted, in some cases one cent or ten cents

is awarded so as to carry the costs against defendant, was erroneous because misleading.

**Libel:** DEFINITION.  A publication which tends to expose one to public hatred or contempt and to deprive him of the benefits of public confidence and injure him in his trade or business is libelous; as where defendant in effect charged plaintiffs with entering into a pool to control a certain local hog market.

**Libel:** MALICE: EVIDENCE.  Malice is a direct issue in a suit for libel and the defendant may testify directly to his lack of malice and that his feelings toward plaintiff, both before and after the publication, were friendly; but he cannot give his opinion of plaintiff's feelings toward him.

Overruling Barr v. Hack, 46 Iowa, 308.

*Appeal from Pattawattamie District Court.*—HON. A. B. THORNELL, Judge.

THURSDAY, JULY 9, 1908.

SUPPLEMENTAL OPINION, TUESDAY, OCTOBER 27, 1908.

ACTION to recover damages for libel.    Trial to a jury.    Verdict for plaintiffs in the sum of $1.    Judgment on the verdict and against plaintiff for costs.    Plaintiffs appeal.—*Reversed.*

*John P. Organ,* for appellants.

*Reed & Robertson,* for appellee.

DEEMER, J.—A. A. Dorn, one of the members of plaintiff firm, was a competitor of defendant in the general merchandise business in the town of Neola, Pottawattamie County.    He was also engaged with J. E. McGinty in the business of buying live stock.    In the town of Neola there was published a newspaper known as the "Reporter," and defendant had a half page of this newspaper reserved for advertising purposes.    Defendant composed and had

printed in the Reporter the following upon the half page
reserved by him:

Flour. Flour we bought two cars of Marshall's Best
Flour four months ago and sold them and bought two
more and have about sold them. We buy flour to sell,
not to carry through four of the hottest months in the
year, May, June, July and August. I would advise a
close inspection of flour carried through these hot months.
1 would sell it for anything I could get and invest it in
hogs—something that I could sell. The hog business is
better than the flour business because hogs will always
sell at a good big profit. We are thinking of going into
the hog business ourselves and see what effect it will have
on the nice little pool that exists since our friend Mr.
Osborn - left this market. We have noticed that Neola
has changed from one of the best hog markets in the whole
country to one of the most bummy. My advice to the
merchants is to imitate Underwood and place a buyer
here to pay what the stuff is worth. The best grade of
hogs sold for 5.80 in So. Omaha Oct. 13 with the Neola
market from 4.50 to 4.80. How long will the merchants
of Neola and the farmers stand that kind of a margin?

This action is bottomed upon that publication, which
it is alleged referred to plaintiffs, was false, scandalous,
and malicious, and resulted in damage to plaintiffs and to
their business. Defendant admitted the publication of the
article, but denied that it was false and scandalous or
malicious. He also averred that the charges therein con-
tained were practically true, and that it was published in
good faith, and for justifiable ends. He also pleaded that
before publishing the article he made such inquiries as led
him to believe that the charges therein were true; and that
he published the same in good faith, honestly believing the
same to be true and for justifiable ends. In another di-
vision of the answer he denied that the article referred to
plaintiffs, and further pleaded that he did not know of the
existence of plaintiff firm at the time he made the pub-

lication.  Shortly after the action was commenced, and
before it was brought on for trial, defendant offered
to confess judgment in favor of plaintiffs for the sum of
$6 and the costs accrued to that time.  This offer was
refused by plaintiffs, and the case went to trial, resulting
in a verdict for plaintiffs in the sum of $1.  Thereafter
judgment was rendered upon the verdict, but the costs
were taxed to plaintiffs because of their refusal to accept
the offer to confess.  The appeal challenges some of the
rulings on the admission of testimony and certain of
the instructions given by the trial court.

For the purpose of showing actual, as distinguished
from legal, malice upon the part of the defendant, plain-
tiffs undertook to show the market price of hogs at South
Omaha, at Neola, and at the towns of
Underwood and Minden, which towns were
but a short distance from Neola, on the
13th day of October, 1903.  In order to meet this showing,
defendant was permitted, over plaintiff's objections, to
show what the market was at Neola on that day, and
what he was told by others regarding the prices being
paid at that time.  For the purpose of rebutting the in-
ference of legal malice, we think this testimony was
admissible.  It was not admissible in justification, for the
truth was not pleaded as a defense; nor was it admissible
in mitigation of actual damages for three reasons:  (1)
Because it was not pleaded in mitigation; (2) the article
did not purport on its face to be based upon anything
save defendant's own knowledge; and (3) even if pleaded
in justification, the testimony could not, under the authori-
ties, be received in mitigation.  But as testimony to the
same point was offered by plaintiffs to establish actual
malice, defendant was entitled to rebut the same by showing
the actual market prices and his information regarding
the same at the time he made the publication.

A witness for defendant was asked as to what another

1. SLANDER AND
   LIBEL: malice:
   evidence.

firm engaged in buying hogs in Neola said was the market
price of hogs at Neola on the 12th of October, 1903.

Plaintiffs objected to this, and the court
2. Evidence: or-
der of intro-
duction: ex-
clusion.
inquired of defendant's counsel if he ex-
pected to follow it up by showing that the
information was imparted to the defendant.
Upon being informed by counsel that he expected to do
so, and that in his opinion the testimony was admissible
any way, the trial court received the testimony. Counsel
did not comply with his promise to show that defendant
was informed of the matter, and plaintiff's counsel made
no motion to have the testimony excluded. Such being
the state of the record, plaintiffs have no legal ground
for complaint. The order of the introduction of testi-
mony lies in the sound discretion of the trial court, and
the judge was justified in receiving the evidence upon the
statement or promise of defendant's counsel. If it there-
after appeared that the testimony was inadmissible, plain-
tiff's counsel should have moved to strike it from the
record. The conclusions so far reached regarding the
introduction of testimony are sustained by the following,
among other, authorities: *Gaar v. Nichols,* 115 Iowa,
223; *Riech v. Bolch,* 68 Iowa, 526; *Beardsley v. Bridg-
man,* 17 Iowa, 291; *Hanners v. McClelland,* 74 Iowa,
318; *Marker v. Dunn,* 68 Iowa, 720; *Clifton v. Lange,*
108 Iowa, 472.

Over plaintiffs' objections, defendant was permitted
to show that before the publication of the article he never
had had any trouble with either Dorn or McGinty, and,
over plaintiffs' objections, was permitted to
3. Libel: dam-
ages: evi-
dence.
answer this question: "You may tell the jury
what, if any, ill feeling there was upon your
part towards either of the plaintiffs, or upon their part
towards you, if you know." Under our rule this latter
ruling, if not the former, was erroneous. *Barr v. Hack,*
46 Iowa, 308. See, also, *Berger v. Freeman,* 132 Iowa,

290. Counsel for appellee attempt to distinguish these cases, but in our opinion the *Barr* case is exactly apposite.

II. Defendant's plea of mitigation has already been stated and it will be noticed that it is a narrow one. It is based upon alleged inquiries made by him as to the prices paid for hogs at Neola, and upon what should have been paid at that place, and the fact that he did not know of the existence of plaintiff firm. In instructing the jury with reference to these matters, the trial court gave the following:

4. SAME

> Now if any or all of these matters are shown by the evidence, the defendant would be entitled to have said matters so shown considered in mitigation of any damages that you might award against him, and also as bearing upon the question of whether in publishing said article or not he acted with express or actual malice, the burden resting with the defendant to show said mitigating circumstances by the greater weight of the evidence. You will understand that the above matters, if shown, would not be a complete defense to the publication of said article, if same was published concerning the plaintiff firm, but are only to be regarded in mitigation of damages and as bearing upon the question whether the defendant in making said publication acted with express malice or not. If it appears from the evidence that, at the time the defendant published said article, he did not know of the existence of Dorn & McGinty, as a copartnership, said matter should be considered in mitigation of damages as above explained.

We have already indicated our views with reference to the testimony admitted to sustain the plea interposed by defendant. Such testimony was admissible only to negative the thought of express or actual malice. It should not be considered in mitigation of the actual damages sustained, for defendant professed to speak of his own knowledge, and not from information derived of others. The trial court in its instructions told the jury that the

testimony might be considered not only in its bearing upon the question of malice, but in mitigation of the actual damages sustained. In this there was manifest error. *Marker v. Dunn, supra; Wallace v. Homestead Co.,* 117 Iowa, 348; Townshend on Slander & Libel, section 411; *Buckstaff v. Hicks,* 94 Wis. 34 (68 N. W. 403, 59 Am. St. Rep. 853); *Williams v. Fuller,* 68 Neb. 354 (94 N. W. 118, 97 N. W. 246); *Rep. Co. v. Miner,* 12 Colo. 77 (20 Pac. 345); *Hinkle v. Davenport,* 38 Iowa, 355; *Sickra v. Small,* 87 Me. 493 (33 Atl. 9, 47 Am. St. Rep. 344); *Callahan v. Ingram,* 122 Mo. 355 (26 S. W. 1020, 43 Am. St. Rep. 583); *Thompson v. Powning,* 15 Nev. 195.

The latter part of the instruction relating to defendant's knowledge of the existence of the plaintiff firm is also erroneous for two reasons: First, because the testimony showed without conflict that defendant did know or believe that plaintiffs were in the business of buying hogs; and for the further reason that, even if he did not know, his lack of knowledge would not mitigate the actual damages sustained. At most, the testimony would tend to show want of malice—this, and this alone. The instruction should not have been given.

5. SAME.

III. Part of the instructions relating to damages read as follows: "Damages in a case of this kind are of three kinds, to wit, nominal damages, actual damages, and exemplary damages. Nominal damages are given in cases where a wrong has been committed but no actual injury or damage has resulted to the person against whom the wrong was committed, and in such cases some small sum as one cent or ten cents is awarded as damages in order to carry the costs against the person committing the wrong. In this case, if you find that the article in question was published of and concerning the plaintiff firm of Dorn & McGinty, but you believe from the evidence that no injury

6. NOMINAL DAMAGES: instruction.

has resulted to the plaintiff therefrom, then you should award only nominal damages." Whilst it is no doubt true that nominal damages only may be awarded in libel suits, yet as a general rule, the law presumes actual damages from the publication of an article libelous *per se.* Aside from this, however, the jury has nothing to do with the matter of costs, and it is better practice not to refer to it in the instructions. If it is referred to, the jury should not be misled regarding the matter. The instruction here given, in view of the offer made to confess judgment, was positively misleading, in that an award of the nominal damages stated would not carry costs. A jury, in such cases, is prone to return a compromise verdict, and it is well known that they frequently return their verdicts with an eye to the adjustment of the costs. It is common knowledge of the profession that in such cases juries more frequently than otherwise consider the matter of costs in making their awards. With this fact in mind, it is better to say nothing about the costs. But if reference is made to the matter, it should not be so stated as to mislead the jury. Under the English practice it was the custom of judges not to refer to the matter of costs even at the jury's request. See Townshend on Slander and Libel (4th Ed.), 517, and cases cited; *Wilson v. Reed,* 2 Fost. & F., 149; *Shay v. Water Co.,* 6 Cal. 286; *Steketee v. Kimm,* 48 Mich. 322 (12 N. W. 177). We are constrained to hold that this instruction, in view of the circumstances disclosed by the record, should not have been given.

Appellee says, however, that the jury did not follow the instruction, in that it awarded compensatory damages in the sum of $1. It will hardly do to say that a verdict for $1 is compensatory; but, if it be, this does not cure the error in the instruction. The award may have been made in order that there might be no question as to who should pay the costs without any reference to compen-

sation to the plaintiff; but, if this be not true, the vice of the instruction with reference to mitigation of damages becomes apparent. That is to say, the jury may have concluded that the mitigating facts pleaded should be considered in reduction of actual damages suffered. Upon no ground can the instruction quoted be sustained.

Although we do not regard the proposition involved in the case, it may be well to speak of defendant's claim that the article is not libelous, *per se*. Plaintiffs were 7. LIBEL: definition. charged, or at least the jury was authorized to so find, with entering into a pool to control the prices in the hog market at Neola. The trial court instructed that this charged them with a crime. Defendant contends that this is not so, and cites in support of his contention *Achorn v. Piper,* 66 Iowa, 694. It is true that that case seems to so hold, although not as broadly as defendant contends. But sections 5060, 5061, and 5062 of the Code, in force when the publication was made, made pools and combination to regulate or fix the price of any commodity a crime. These statutes did not exist when the *Achorn* case was decided. But counsel insist that these statutes were and are unconstitutional and void, and that the law is in fact the same as when *Achorn's* case was decided. This contention overlooks the proper definition of libel, and, were we to concede for the purposes of the case that the statutes are unconstitutional, it does not follow that plaintiff was not slandered and defamed not only in their business or trade, but in the eyes of the people. The Legislature in declaring the public policy of the State had spoken in an authoritative way, and although the statutes may have been void because not uniform in their operation, or because of the varying degrees of punishment, the acts with which plaintiffs were charged were none the less contrary to the public policy of the State as declared by proper legislative authority, and the publication thereof would of necessity tend to ex-

pose plaintiffs to public hatred or contempt, and to deprive them of the benefits of public confidence or social intercourse.   This latter is the definition of libel ˙for civil as well as criminal cases.   *Morse v. Printing Co.,* 124 Iowa, 713; *Stewart v. Pierce,* 93 Iowa, 136.   Manifestly the words written of plaintiffs would injure them in their trade or business.   Since *Achorn's* case was decided, there has been a remarkable change not only in public opinion, but in the law as well, regarding pools, combinations, and trusts calculated to stifle competition, control prices, or regulate the output of goods, and the law of libel must of necessity keep pace with public opinion as reflected in the public prints as well as in legislation. Conceding arguendo that the law is unconstitutional, and that defendant may attack it collaterally, it does not follow that it may not be considered in determining the libelous character of the publication.

For the errors pointed out, the judgment must be, and it is, *reversed.*

### SUPPLEMENTAL OPINION.

*Per Curiam.*   In a petition for rehearing the rule announced in the first division of the opinion with reference to the admissibility of defendant's testimony as to his feelings toward the plaintiff is strongly challenged.˙ It is argued that the *Barr-Hack* case, 46 Iowa, 308, does not decide the question; and in the petition, for the first time during the progress of the case, we are asked to overrule that case, if it cannot be distinguished.

As the element of express malice is involved in every action of libel or slander, and may be found from the nature of the publication itself or from the circumstances surrounding the publication, it is clear that the *Barr* case is directly in point upon the proposition that defendant's prior feelings toward the plaintiff cannot be shown ˙for

any purpose. There is no way of distinguishing the case. Since its announcement that case does not seem to have been cited in support of the ruling, and we have but the single one upon this proposition. It is argued that the case is wrong, both on principle and authority, and that it should be overruled. As already intimated, this is the first time such request has been made during the progress of this action. As it is to be retried and the question will again arise, we have thought it best to reconsider the *Barr-Hack* case in the light of authorities.

It is a general rule that, when intent, motive, or malice is directly in issue, a party may testify directly to his intent or purpose, and, if malice be involved, to his friendly feelings toward the other party. 8. LIBEL: malice: evidence. *Heap v. Parish,* 104 Ind. 36 (3 N. E. 549); *Campbell v. Railroad,* 97 Md. 321 (55 Atl. 532); *Sherbourne v. Rodman,* 51 Wis. 474 (8 N. W. 414); *Brown v. Insurance Co.,* 151 Mass. 127 (23 N. E. 733); *Brewer v. Watson,* 71 Ala. 299 (46 Am. Rep. 318); *Boddy v. Henry,* 113 Iowa, 462 (85 N. W. 771, 53 L. R. A. 769); *Watson v. Cheshire,* 18 Iowa, 203; *Frost v. Rosecranz,* 66 Iowa, 405. But he cannot testify to another's intent, as that would be a mere inference or conclusion. *Hamer v. Bank,* 9 Utah, 215 (33 Pac. 941); *Hurlburt v. Boaz,* 4 Tex. Civ. App. 371 (23 S. W. 446); *Dutton v. Seevers,* 89 Iowa, 302; *Sweet v. Wright,* 62 Iowa, 215. As the question of malice is directly at issue in a libel case, it is held almost without exception that the defendant may testify to his lack of malice and that his feelings toward plaintiff were friendly both before and recently after the publication. *Burdette v. Argill,* 94 Ill. App. 171; *Faxon v. Jones,* 176 Mass. 206 (57 N. E. 359; *Friedman v. Pulitzer Pub. Co.,* 102 Mo. App. 683 (77 S. W. 340); *Wrege v. Jones,* 13 N. D. 267 (100 N. W. 705, 112 Am. St. Rep. 679); *Palmer v. Mahin,* 120 Fed. 737 (57 C. C. A. 41); *Atwater v.*

*News Co.,* 67 Conn. 504, (34 Atl. 865); *Ranson v. McCurley,* 140 Ill. 626 (31 N. E. 119); *Peoples v. Detroit P. & T. Co.,* 54 Mich. 457 (20 N. W. 528); *Mowry v. Raabe,* 89 Cal. 606 (27 Pac. 157).

The only case to the contrary, aside from those cited in the opinion itself, is *Barr v. Hack.* Much of the argument used in support of that opinion by way of analogy and otherwise has already been repudiated in many cases decided since that time, and, as we think the doctrine of the opinion unsound, the decision is overruled. It follows that the objection to the question, in so far as it called for defendant's opinion regarding plaintiff's feelings toward him, should have been sustained; but, as the witness in answer gave simply his feelings toward plaintiff, no prejudice resulted.

Other points are made in the petition for rehearing, but they are without merit.

The first division of the opinion is modified to the extent indicated, and the petition for rehearing will be *overruled.*