[Civil No. 248.   Filed April 15, 1889.]

[21 Pac. 465.]

## T. W. JOHNSTON, Plaintiff and Appellee, v. R. E. MORRISON, Defendant and Appellant.

1. LIBEL—PLEADING—INNUENDO—PROOF MUST CONFORM THERETO.— Where words are not actionable *per se,* and the plaintiff places his version upon them in his pleading, he will be bound thereby, and his proof must conform thereto.

2. SAME—SAME—WORDS NOT ACTIONABLE PER SE—NECESSITY FOR AN INNUENDO—WHEN SURPLUSAGE.—Where the libelous words, *prima facie,* are not actionable an innuendo is essential to the action.  If actionable *per se,* the innuendo may be rejected as surplusage.

3. WITNESSES—PARTIES—COMPETENT.—Where a party is upon the stand as any other witness, he is competent to testify upon all matters material to the issues.

WRIGHT, C. J., dissents.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Apache. James H. Wright, Judge.   Reversed.

The facts are stated in the opinion.

E. M. Sanford, for Appellant.

The words are not libelous *per se.*   Words cease to be libelous *per se* the moment that they require an innuendo to explain what they mean.

When the words used by the defendant do not of themselves convey the meaning which plaintiff would attribute to them, and such meaning results only from some extrinsic matter or fact, it is essential that the extrinsic matter or fact upon which he relies to give them meaning must be set forth in the complaint.   Van Santvoord on Pleading, 271, 272; *Christal* v. *Craig,* 80 Mo. 373; *Legg* v. *Dunleavy,* 80 Mo. 563, 50 Am. Rep. 512; *Pollard* v. *Lyon,* 91 U. S. 225; *Nidever* v. *Hall,* 67 Cal. 79, 7 Pac. 137; *Clark* v. *Fitch,* 41 Cal. 481; *Maynard* v. *Fireman's Ins. Co.,* 34 Cal. 48, 91 Am. Dec. 672; Townsend on Libel, secs. 335, 336.; *Van Vech-*

*ten* v. *Hopkins*, 5 John. 211, 4 Am. Dec. 339, note; Estee on Pleading, 1688; Boone on Code Pleading, 163.

The covert meaning must be explained and the true interpretation brought to light by a prefatory averment. Estee on Pleading, 3635.

Innuendos are not allegations, nor the subject of proof. *Van Vechten* v. *Hopkins*, 5 John. 211, 4 Am. Dec. 339, note; *Legg* v. *Dunleavy*, 80 Mo. 563, 50 Am. Rep. 512; *State* v. *Corbett*, 13 R. I. 289; *State* v. *Mott*, 45 N. J. L. 494; Townsend on Libel, 127, 129, 334, 335, 338.

It was the defendant's right to show the natural signification of the words, for, "Where the words are capable of two constructions, in what sense they were intended is a question of fact for the jury." Townsend on Libel, secs. 281, 286; *O'Donnell* v. *Hastings*, 68 Iowa, 271, 26 N. W. 433; *Roberts* v. *Cander*, 9 East, 95. The rule is, "First ascertain the meaning of the words themselves, and then give them the effect any reasonable bystander would affix to them." *Hankinson* v. *Bilby*, 16 Mees. & W. 443; *Campbell* v. *Campbell*, 54 Wis. 90, 11 N. W. 456.

Defendant should have been allowed to show his motives, objects, intent, and good faith; and to show that the article was published in the public interest and for justifiable purposes, and at least in mitigation of damages. *Bronson* v. *Bruce*, 59 Mich. 467, 60 Am. Rep. 307, 26 N. W. 671; *Pittsburgh A. and M. Co.* v. *McCurdy*, 114 Pa. St. 554, 60 Am. Rep. 363, 8 Atl. 230; *Bradley* v. *Cramer*, 66 Wis. 297, 28 N. W. 372; *Marks* v. *Baker*, 28 Minn. 162, 9 N. W. 679; *Crane* v. *Waters*, 10 Fed. 619; *State* v. *Balch*, 31 Kan. 465, 2 Pac. 609; *Briggs* v. *Garrett*, 111 Pa. St. 404, 56 Am. Rep. 274, 2 Atl. 513.

All the facts and circumstances may be given in evidence by the defendant to show probable ground and to rebut malice. *Neeb* v. *Hope*, 111 Pa. St. 145, 2 Atl. 571; *Chapman* v. *Caldon*, 14 Pa. St. 365; *Thompson* v. *Sounding*, 15 Nev. 203; *Fahr* v. *Hayes*, 50 N. J. L. 275, 13 Atl. 261.

Defendant is a competent witness under the statute to testify as to the construction of the language as well as plaintiff, and the jury could judge of the weight. *Klink* v. *Colby*, 46 N. Y. 434, 7 Am. Rep. 360; *Hastings* v. *Lusk*, 22 Wend. 400.

To know if the innuendo was broader than the words
naturally bear, the jury were entitled to learn their natural
signification.  *Pollard* v. *Lyon*, 91 U. S. 233; *Campbell* v.
*Campbell*, 54 Wis. 90, 11 N. W. 456.

Harris Baldwin, for Appellee.

In construing a publication alleged to be libelous, the scope
and object of the whole article is to be considered, and such
a construction put upon its language as would naturally be
given to it.  The test is whether in the mind of an intelligent
man the terms of the article and the language used naturally
import a disgraceful charge.  If it does, the publication is
libelous *per se*.  *More* v. *Bennett*, 48 N. Y. 472; *Price* v.
*Whitely*, 50 Mo. 439.  Under the statutes of California and
New York, it is settled that it is libelous *per se* to falsely
impute to a person, in his trade, profession, or business, any
kind of fraud, dishonesty, misconduct, incapacity, or unfit-
ness.  *Sanderson* v. *Caldwell*, 45 N. Y. 405, 6 Am. Rep. 105;
*More* v. *Bennett*, 48 N. Y. 472; *Bergman* v. *Jones*, 94 N. Y.
51; *Wilson* v. *Fitch*, 41 Cal. 363; *Fitch* v. *De Young*, 66 Cal.
339; *Dixon* v. *Allen*, 69 Cal. 528; *Bettner* v. *Holt*, 70
Cal. 270.

Any publication is libelous *per se* which denies to a man
the possession of some such worthy quality as every man is
supposed to possess, or which tends to bring him into public
hatred or disgrace, or to degrade him in society, or to ex-
pose him to hatred, contempt, or ridicule, or which reflects
upon his character, or imports something disgraceful to him,
or throws contumely on him, or odium, or tends to villify
him or injure his character or diminish his reputation, or which
is injurious to his character, or shows him to be immoral or
ridiculous, or induces an ill opinion of him, or detracts from
his character as a man of good morals, or alters his position
in society for the worse, or imputes to him a bad reputation,
or degradation of character, or ingratitude, and all defama-
tory words injurious in their nature.  Townsend on Slander
and Libel, 3d ed., secs. 176, 177; *Feder* v. *Herrick*, 43 N. J. L.
24; *Crane* v. *Riggs*, 17 Wend. 209; *Crosswell* v. *Weed*, 25
Wend. 521.

In an action for libel it is not necessary for the plaintiff

to prove affirmatively that he has sustained damage in consequence of the libelous publication. The law not only imputes malice to the defendant, but presumes that damages have been sustained by the plaintiff. *Sanderson* v. *Caldwell,* 45 N. Y. 398; *Lick* v. *Owen,* 47 Cal. 252.

The rule is, that when the publication is actionable upon its face, and is not uttered on a lawful occasion and with justifiable motives, the law infers malice, although none be proved. 3 Sutherland on Damages, pp. 660, 661.

An injurious publication is presumed to have been malicious if no justifiable motive for making it is shown. Rev. Stats. Arizona, p. 708, sec. 406. Such presumption cannot be rebutted by evidence. *Lick* v. *Owen,* 47 Cal. 252. The averments of the complaint are sufficient. 1 Estee's Pleadings, 3d ed., sec. 1698.

The introduction by the appellant in evidence of certain indictments referred to in the libel does not establish the truth of the publication so far as the libelous parts are concerned. *Price* v. *Whitely,* 50 Mo. 439.

The publication being actionable *per se,* the appellant cannot show good faith, motive, or purpose, neither can he show his intent. Estee's Pleadings, secs. 1668, 1670.

PORTER, J.—This is an action for libel, alleging that the defendant printed and published a certain publication which was a libel on defendant. The portion of the publication as to which most of the testimony related is as follows: "A certain gang of rustlers, in the southern part of the county, known as the 'Clanton-Stanley Outfits,' who had been a terror for years, were last summer 'run to ground' and lodged in the county jail. The notorious Fin Clanton was put upon trial with fifteen indictments for cattle stealing against him. Previous to the arrival of a near relative of the district attorney, [thereby meaning and referring to this plaintiff,] Clanton had retained two lawyers of acknowledged ability to defend him; but, when this new 'actor' [thereby meaning this plaintiff] appeared upon the scene, his relationship [meaning plaintiff's relationship to the district attorney of Apache County, said territory,] secures his [meaning plaintiff's] employment by Clanton. Such pressure is brought to

bear that Clanton is convicted and sentenced to ten years at Yuma, and now begins the 'fine work,' [meaning and intending by 'fine work' the unlawful bribing of said district attorney by this plaintiff]. Mr. Relative [meaning this plaintiff] appears for Stanley, against whom there is at least three or four sure cases, and suggests that, with the consent of his [meaning plaintiff's] brother-in-law, the district attorney, a compromise has been effected, to the effect that Stanley is to be banished from the territory of Arizona, and he [Stanley] shall not even be required to plead guilty, [meaning and intending thereby that this plaintiff had unlawfully and corruptly bribed said district attorney and wrongfully induced said district attorney to permit this plaintiff's client, said Stanley, to leave the territory of Arizona without pleading guilty to the indictments standing against him, and thus escape punishment].''

If the words ''fine work,'' as set forth in the complaint, are actionable *per se*, no construction of the language is needed. We do not think they are actionable *per se*, and, not being so, plaintiff in his pleadings places his version of the language, and he must be bound by it. We will take it for granted that his pleadings are all that is required, as not being necessary to state extrinsic matter. We incline to think there has been a compliance with our statutes. But his proofs must be confined to his allegations of his meaning of the defamatory words published. In Odger's Libel and Slander, on page *99, the author says: ''In arriving at the meaning of the defendant's words, the court and jury are often materially assisted by an averment in the plaintiff's statement of claim, called an 'innuendo.' This is a statement by the plaintiff of the construction which he puts on the words himself, and which he will endeavor to induce the jury to adopt at the trial. Where a defamatory meaning is apparent on the face of the libel itself, no innuendo is necessary, though even there the pleader occasionally inserts one to heighten the effect of the words. But, where the words *prima facie* are not actionable, an innuendo is essential to the action. It is necessary to bring out the latent injurious meaning of the defendant's words, and such innuendo must distinctly aver that the words bear a specific actionable meaning.'' Plaintiff

must stand by his pleading at least in regard to the innuendo. *Strader* v. *Snyder*, 67 Ill. 404. If the words are not actionable *per se*, it will be the province of the jury to say whether the plaintiff's construction of the words is borne out by the evidence. If the words are actionable *per se*, the innuendo may be rejected as surplusage. The plaintiff chooses his own battle-ground, and is expected to fight on it, and he does there show fight, for he introduces testimony as to the meaning of "fine work."

John C. Herndon, an attorney, who had defended Stanley in connection with the plaintiff, testified: "I would say, in reading the article, I would think from these words 'fine work' that the idea intended to be conveyed would be improper work. There was no impure work, as far as I know of; i. e., I don't understand the meaning of the words 'fine work' in this article to mean the intended bribing. I will not say that I would be willing to swear that the meaning is unlawful bribery. That article does not give any idea as to that." Robert Scott, examined for plaintiff, says: "Taking the entire article, I think that 'fine work' means bribing the district attorney. 'Fine work' applies to what follows, and means something illegally done." J. T. Lessuer, sworn for plaintiff, says: "I think the article charges Mr. Johnston with certain wrongs; that he had done wrong work. I understand it to mean something pretty slick. . . . I got my definition of the words 'fine work' from the whole article, and not from a part of it. I take it from the article that the compromises were illegal. . . . From my understanding of that article, they had no right to make compromises, and the words 'fine work' mean an unlawful action." Dr. Dalby, for plaintiff, testified: "My opinion is 'fine work' means anything illegal. I base my opinion upon the article, nothing else. My construction was that it meant improper transactions on the part of Johnston. In the Stanley case the article gives the meaning that they had no authority to make the compromise." Mr. McDonald, for plaintiff, testified: " 'Fine work' is used there to mean corruption of the district attorney. . . . 'Fine work' has different meanings. As I stated in reference to this article, 'fine work' is owing to what you construe it to mean. 'Fine work' is noble work.

It has a double meaning, according to how you construe it. 'Fine work,' in connection with this article, is that of corruption." Barry Matthews, for defendant, testified: " 'Fine work' is, of course, not ordinary work. 'Fine work' means something skillfully done. It means anything that is skillfully, adroitly, and successfully done. It applies to this article, and means something that is done here by some such scheme, which one is left to imagine. Knowing them, I put it together, and got the construction intact. It might be some sort of successful work or the other. I have said I might alter my construction of it. Knowing Baldwin, as I did, I do not think for a moment that bribing was intended. I could not think it was bribery. The first inference I could think of was a collusion of these parties. Bribery? Well, I did not think of such a thing; of course, it allowed of a collusion between the parties for some purpose." T. W. Nelson was called and examined for defense, and testified: "My understanding of the words 'fine work' in that article is successful completion; result effected. I don't understand it to mean anything unlawful that was done by the district attorney. I understand, from reading the whole article, that Johnston was enabled by some means or other to do more effectual work. *Question.* Now, sir, state whether or not, at the time of reading the article, you put upon it the construction that there had been bribery done. (Objection sustained.)" On cross-examination by Mr. Baldwin, witness said: "I did not take the article to mean that it was Johnston who could bribe him. I thought from reading the article that you would do things for him that you would not do for any other attorney. I thought that Johnston would be more successful in his business, as you were district attorney, and a relative. I am a sworn friend of Morrison, and I am not a sworn friend of Johnston, nor of you." R. E. Morrison, the defendant, was asked: "What did you intend to say at the time you used the words 'fine work'? (Objection made, and sustained by the court; and again he was asked:) Do you know what is the ordinary meaning of the words 'fine work'? (Objection made, and sustained; and further:) State whether or not, if you know the ordinary significance of the words, 'Mr. Relative appeared for Stanley, and suggested that,

with the consent of his brother-in-law, the district attorney, a compromise had been effected to the effect that Stanley is to be banished from the territory of Arizona, and he shall not be required to plead guilty.' (Objection made and sustained.)''

We thus find that the plaintiff sought to prove the intent of words used in the article imputed bribery to him, and a number of witnesses testified thereon. The defendant, when placed upon the stand, was asked what meaning he intended to convey when he used the words ''fine work.'' We think that was an improper question. An apt illustration is given in Odgers on Slander and Libel, p. 108: ''You stole my apples.'' The defendant cannot be allowed to state that he only meant to say: ''You have tortiously removed my apples under an unfounded claim of right.'' But when asked whether he knew what is the ordinary meaning of the words ''fine work,'' and also the significance of other words of the complaint, it was denied him to answer. He was on the stand as any other witness, and should not have been precluded from giving an interpretation of the words; and for this refusal we conclude that there was error.

We think that the court also erred in refusing to give the twentieth special request asked for by defendant, which is as follows: ''The plaintiff having, in what is termed an 'innuendo,' alleged that the words 'fine work' were intended by the defendant to be understood by the readers thereof as meaning that the plaintiff had unlawfully bribed the district attorney of this county, the plaintiff is bound by that construction, and he must prove that the words were understood by the readers, by a preponderance of evidence, as meaning that the plaintiff had unlawfully bribed the district attorney of this county, and cannot recover upon any other meaning or construction of said words.''

The court also erred in refusing to grant defendant's twenty-eighth special request, which is as follows: ''The plaintiff having, in what is termed an 'innuendo,' attempted to explain that the words following, to wit: 'Mr. Relative appears for Stanley, against whom there is at least three or four sure cases, and suggests that, with the consent of his brother-in-law, the district attorney, a compromise had been

effected to the effect that Stanley is to be banished from the territory of Arizona, and he shall not even be required to plead guilty,'—were intended by defendant to be understood by the readeis thereof as meaning that plaintiff had unlawfully and corruptly bribed the district attorney of this county, or wrongfully induced said district attorney in permitting plaintiff's client, Stanley, to leave the territory of Arizona without pleading guilty to the indictment standing against him, and thus escape punishment; the plaintiff is bound by that construction, and he must prove to your satisfaction, by a preponderance of evidence, that those words were understood by the readers thereof that plaintiff had unlawfully and corruptly bribed the district attorney of this county, and wrongfully induced said district attorney to permit the plaintiff's client, Stanley, to leave the territory of Arizona without pleading guilty to the indictments standing against him, and thus escape punishment.'' The judgment is reversed, and a new trial ordered.

Barnes, J., concurs.

WRIGHT, C. J.—I must respectfully dissent from the views expressed in the opinion of the court.