GALVESTON TRIBUNE v. JOHNSON.

(Court of Civil Appeals of Texas. Galveston.
Nov. 9, 1911. Rehearing Denied
Dec. 7, 1911.)

1. LIBEL AND SLANDER (§ 34*)—PRIVILEGED
MATTER—ACTUAL MALICE.

A publication libelous in its nature cannot be made the basis of an action for libel if the matter is privileged, unless there is proof of actual malice, as provided by Laws 1901, c. 26, § 3.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 113; Dec. Dig. § 34.*]

2. LIBEL AND SLANDER (§ 48*) — PRIVILEGED
PUBLICATIONS—REQUISITES.

While Laws 1901, c. 26, § 3, provides that a reasonable or fair comment on or criticism of the official acts of public officials and of other matters of public concern published for general information shall be privileged, other statements, if statements of fact as distinguished from the mere opinion of the writer, in order to be privileged, must be "fair, true, and impartial."

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 144–147; Dec. Dig. § 48.*]

3. LIBEL AND SLANDER (§ 80*)—LIBELOUS
STATEMENTS—PRIVILEGE—PETITION.

A petition for libel, alleging that defendant published of and concerning plaintiff, a member of the state Legislature and chairman of the committee on municipal corporations, that during the hearing of proposed amendments to Galveston city charter, plaintiff engaged in villification, slander, misrepresentation, and profanity, that no such public exhibition among the many given by plaintiff and another had ever equalled that before the committee, and that it outdid everything of the kind ever presented before a committee of the Legislature, charged the making of statements of fact as distinguished from comment or criticism, and was therefore not objectionable on the ground that the matter stated was privileged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 184–186; Dec. Dig. § 80.*]

4. APPEAL AND ERROR (§ 1042*)—REVIEW—
RULINGS ON PLEADINGS—PREJUDICE.

Where no innuendo or explanation was necessary to show that an alleged libelous publication was intended to refer to plaintiff, and the statements therein were libelous, and entitled plaintiff to general damages unless true, defendant was not prejudiced by the court's action in striking out certain immaterial allegations by way of innuendo.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4110–4114; Dec. Dig. § 1042.*]

5. LIBEL AND SLANDER (§ 118*) — SPECIAL
DAMAGES.

Where defendant published a libelous publication concerning plaintiff's conduct as a member of a legislative committee, injury to plaintiff's political career and his opportunities to secure public offices were proper elements of special damage.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 345, 346; Dec. Dig. § 118.*]

6. APPEAL AND ERROR (§ 1068*)—REVIEW.

Where the jury in an action for libel awarded plaintiff general damages only, defendant was not prejudiced by the court's refusal to submit a particular element of special damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228; Dec. Dig. § 1068.*]

7. EVIDENCE (§ 472*) — OPINIONS — MATTERS
FOR JURY.

In an action for libel, the opinion of witnesses as to the effect the article had on plaintiff's reputation and standing in the community was inadmissible; the matter being for the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2186–2195; Dec. Dig. § 472.*]

8. APPEAL AND ERROR (§ 1051*)—HARMLESS
ERROR—EVIDENCE.

In view of the presumption of injury from a libelous publication which is neither privileged nor true, where the facts stated are such on their face as to expose plaintiff to public hatred, contempt, or ridicule or to impeach his reputation, the erroneous admission of the opinions of witnesses as to the effect of the words is not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4169; Dec. Dig. § 1051.*]

9. LIBEL AND SLANDER (§ 28*) — LIBELOUS
PUBLICATION—DEFENSES—OTHER PUBLICATION.

Where defendant published a libelous article against plaintiff, it was no defense that defamatory statements to the same effect were published in another newspaper at the same time.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 104; Dec. Dig. § 28.*]

10. LIBEL AND SLANDER (§ 123*)—LIBEL PER
SE—INSTRUCTIONS.

Where a defamatory publication was such that it necessarily must, or as a natural and probable result would, tend to injure plaintiff's reputation, and expose him to public hatred, contempt, or ridicule, or impeach his reputation, and was therefore libelous per se as provided by Laws 1901, c. 26, it was proper for the court to instruct the jury that the publication was libelous per se.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

11. LIBEL AND SLANDER (§ 41*)—STATUTES—
QUALIFIED PRIVILEGE.

Laws 1901, c. 26, relating to libel, defines the matters which shall be privileged, and cannot be made the basis of an action for libel without proof of actual malice, and then provides (section 4) that nothing in the act shall be construed to take away any existing defense to a civil action for libel. Held, that the provision of section 4 did not so qualify the definition of privileged matter given in the preceding sections as to retain the defense of conditional or qualified privilege so as to make a fair and impartial account of such matters as are privileged under the statute, privileged in fact, though untrue, in case they are published without actual malice.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129; Dec. Dig. § 41.*]

12. TRIAL (§ 252*)—INSTRUCTIONS—APPLICA-
BILITY TO EVIDENCE.

Where there was no attempt to prove that an alleged libelous publication was either literally or substantially true, the court did not err in refusing to charge that defendant need

only establish that the statements were substantially true.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

13. LIBEL AND SLANDER (§ 124*)—INSTRUCTIONS—DAMAGES.

In an action for libel, a request to charge that the jury could not include damages suffered by plaintiff that resulted from any other publication than the one declared on was properly modified so as to read that the jury would render no judgment against defendant for damages except such, if any, as were naturally or proximately caused by its own action, but the fact that the action of another may have contributed to the injury and damage constituted no defense in the action being tried, or to the amount of recovery.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 365–373; Dec. Dig. § 124.*]

14. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR — REQUEST TO CHARGE—MODIFICATION.

While a party is entitled to have charges requested by him either given or refused as asked, yet there is no prejudicial error in a modification of a request which renders the request more intelligible.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219–4224; Dec. Dig. § 1064.*]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by Marsene Johnson against the Galveston Tribune. Judgment for plaintiff, and defendant appeals. Affirmed.

Mart H. Royston, for appellant. Marsene Johnson, D. D. McDonald, K. C. Barkley, and Chester H. Terrell, for appellee.

REESE, J. This is an action instituted in the district court by Marsene Johnson against the Galveston Tribune, a corporation owning and publishing a newspaper of that name in the city of Galveston, for damages growing out of certain libelous statements published in said newspaper of and concerning plaintiff. In addition to general damages alleged to be $50,000, plaintiff claimed special damages on the ground that said publication had injured him in his business of attorney at law, and also, on the ground that the said libelous publication had been made with actual and express malice, claimed exemplary damages. Defendant by its answer set up as defenses to the action, first, the truth of the statements; second, that they were privileged; and, third, that, if not absolutely privileged, they were qualifiedly privileged, in that the occasion with regard to which the statements were made was privileged, and that, if the statements were not true, they were believed to be true upon reasonable grounds and were made without malice in regard to a matter of public concern. The cause was tried with the assistance of a jury, and the trial resulted in a verdict in favor of plaintiff for $1,250 general damages, the jury finding against the plaintiff

upon the issues of special and exemplary damages. From the judgment, its motion for a new trial having been overruled, the defendant appeals.

Appellee is an attorney at law, and at the time of the publication was a representative in the Legislature for Galveston county. On March 5, 1909, there was published in the Galveston Tribune, a newspaper published in the city of Galveston, and having a general circulation in said city where appellee resided, the following article including the headlines thereof, which were in large type:

"Galveston Disgraced.

"Vile Language Used Before Committee.

"Johnson and Fly Kill Amendments.

"House Committee was Insulted.

"Galveston's Interests Now Upheld.

"Special to the Tribune.

"Austin, Texas, March 5.—An exciting and disgraceful scene was · enacted before the house committee on municipal corporations yesterday just after the Tribune dispatches had been filed for the day. It was during the hearing on the Galveston charter amendments proposed by Hon. Marsene Johnson.

"Villification, slander, misrepresentation and profanity were resorted to by those from Galveston in attendance upon the hearing representing the opposition to the City Commission. The principal actors on this side of the question were ex-mayor A. W. Fly and his supporter, Hon. Marsene Johnson. No such public exhibition among the many given by these two men in past campaigns have ever equalled this one. It outdid anything of the kind ever presented before a committee of the Legislature in Austin.

"If the various Johnson amendments ever had a chance of enactment the life was completely beaten out of them yesterday by the actions of Johnson himself and his cohorts before the committee of which he is chairman and with which he might have had some influence had he deported himself decently."

Evidence was introduced to show special damages and also actual malice in support of appellee's claim for exemplary damages, but the jury found against appellee as to these, and, as he does not complain of this result, it is not necessary to consider anything except what bears upon the question of general damages. A general demurrer and various special exceptions were urged to the petition. The general demurrer was overruled, and also all of the exceptions except those going to the allegations of the petition, by way of innuendo, that by the statements in the article appellee was charged with the violation of the penal laws of the state, and the court also, upon special exception, struck out allegations in the petition

referring to an article published on the following day, after the publication of the article made the basis of the suit. It will not be necessary here more fully to set out the exceptions, which will be referred to as far as is necessary in disposing of the several assignments of error. The court instructed the jury that the publication was libelous per se, and that, unless they believed the statements in the article were true, plaintiff was entitled to a verdict. The jury was further instructed as to general, special, and exemplary damages, and as to the facts under which he would be entitled to recover either, with instructions as to the distinction between the several kinds of damages. By the charge the jury was instructed, if they found for plaintiff, to say what character of damages and the amount of each. The jury found only general damages.

By its first and sixth assignments of error, appellant complains of the action of the court in overruling the general demurrer. The ground of demurrer stated in the propositions is that the article in question appeared upon its face to be a reasonable and fair comment or criticism of the official acts of public officials published for general information, and was privileged.

[1] A publication libelous in its nature cannot be made the basis of an action for libel if it comes under the head of privileged matter, unless there is proof of actual malice. Section 3, Acts 1901, p. 30.

[2] Among other publications made privileged by the statute is "a reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information." It will be noticed from a reading of the entire act that other statements, in order to entitle them to the character of privileged statements, are required to be "fair, true and impartial." These other publications involve statements of facts that have occurred, and, when such statements of facts are made and they come under the definition of libel in section 1 of the act referred to, they must be true to be privileged. This standard of truth, however, cannot be practicably applied to a "comment or criticism" which does not involve a statement of fact at all, but only the opinion of the writer, and hence is only required to be fair and reasonable to be privileged.

[3] It does not require a very close or careful reading of the publication made the basis of this action to see that, while there may be found some statements in the nature of comment or criticism for the most part, it contains statements of facts of and concerning the conduct and actions of appellee at the meeting of the legislative committee of which he was chairman. A close analysis of the publication is not necessary to show this. It is apparent on the face of it. As to such statements of fact they are not privileged

unless true. 25 Cyc. 401. The petition alleged that the statements were false. The general demurrer was properly overruled.

By the second, third, and fifth assignments of error appellant complains of the action of the court in overruling its first, second, and fourth special exceptions to the petition. These exceptions present objections that the matter of the publication is not reasonably susceptible of meaning sought to be attached thereto by the explanations or innuendoes in the petition. The court upon exception struck out certain allegations of the petition by way of innuendo, in substance, that by the statements in the article appellee was charged with a violation of the penal laws of the state.

[4] As to the other matters urged by way of explanation of the meaning of the statements in the publication, we think they were fairly justified by the language of the publication. In so far, however, as they are not so justified, the action of the court in overruling the exception is harmless. No innuendo or explanation was necessary to show that the publication was intended to refer to appellee, and that the statements with regard to him came within the definition of libel in the statute, and entitled appellee at least to general damages unless true. The innuendoes in the petition were unnecessary for this purpose, and whether they remained in the petition or were stricken out was really immaterial. Light Pub. Co. v. Lewy, 52 Tex. Civ. App. 22, 113 S. W. 579; 25 Cyc. 452; Newell on Slander & Libel, 628, § 38; Johnston v. Morrison, 3 Ariz. 109, 21 Pac. 465. The assignments cannot be sustained.

[5] Appellant specially excepted to certain portions of the petition wherein appellee set up as elements of special damages injury to his political career and his opportunities to secure public offices, which were overruled.

[6] In this we do not think the court erred, but, if there was error, it was harmless in view of the verdict of the jury which was in favor of appellant as to such damages.

[7] Much of the testimony admitted over objection of appellant, and set out in the ninth assignment, was merely the opinion of the several witnesses as to the effect the article in question had on the reputation and standing of appellee in the city of Galveston. We think such testimony was not properly admissible. Of this the jury could judge as well as the witnesses. Bradstreet v. Gill, 72 Tex. 119, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768.

[8] But, as to all of such testimony, it went no farther that the presumption which the law attaches to a publication which is libelous per se such as this was. Unless such publication is privileged under the statute, or the statements therein are true, if the facts stated were on their face such as to expose appellee to public hatred, contempt, or ridicule, or to impeach his reputation, it is a conclusive presumption that they did have such effect, and

the opinion of the witnesses that the publication in question did have this effect added nothing to the force of the presumption. Such of the testimony as did not disclose the opinion of the witnesses, but involved positive statements in particular instances of such effect, we think was admissible. We do not think the assignment presents reversible error.

[9] There was no error in admitting the testimony referred to in the tenth assignment of error. It was no protection to appellant that defamatory statements to the same effect were published in another newspaper, and that the injury to appellee's reputation was to be attributed to both publications. If this were a defense, then neither of two or more newspapers each making the same libelous publication could be made liable. Each must answer for its own wrong, irrespective of the other, although neither could be made to respond in damages for the wrong of the other, as was clearly set out in the charge of the court.

[10] It was not error for the court to instruct the jury that the publication was a libel per se, as claimed in the eleventh assignment. The statute (section 1, Acts 1901, supra) defines a libel to be: "A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or virtue or reputation of any one, or to publish the natural defects of any one, and thereby expose such person to public hatred, ridicule or financial injury." If the defamatory publication was such that it necessarily must, or as a natural and probable result thereof would, tend to injure the reputation of a living person or expose him to public hatred, contempt or ridicule, or to impeach his reputation, such defamatory publication is libelous per se. If the statements are true, or if they are privileged, such libel is not actionable. It is not necessary to do more than refer to the writing in question to show that the necessary result of the publication was to injure the reputation of appellee, and to expose him to hatred, contempt, or ridicule. Outside of the presumption of law arising from the language of the article, it was shown by the undisputed evidence that it did have this effect. The court therefore committed no error in charging the jury that the article was a libel per se. Whether it was, was a question of law. But under this and other assignments a question is raised which may as well be decided here.

[11] The fact of the publication was established. So far as we can find from the record, no attempt was made to establish the truth of the statements, although the court submitted the issue to the jury, but appellant attempted to defend on the ground

that the statements were a fair and reasonable criticism or comment on the official conduct of appellee, and that if not true, and if not absolutely privileged, they were conditionally or qualifiedly privileged, and appellant was not liable if it acted without malice and in the honest belief that the statements were true. In support of this contention, it is insisted by appellant that the occasion being a public meeting of a committee of the Legislature was privileged, and that any publication made by it with reference to the proceedings in good faith without actual malice and from a sense of public duty which was believed to be true, whether true or not, constituted privileged matter, for the publication of which it cannot be made liable.

The following matters are declared privileged by the statute, and it is declared that they shall not be made the basis of any action for libel without proof of actual malice:

"(1) A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of the same, when in the judgment of the court the ends of justice demand that the same should not be published, and the court so orders; or any other official proceedings authorized by law in the administration of the law.

"(2) A fair, true and impartial account of all executive and legislative proceedings that are made a matter of record, including reports of legislative committees, and of any debate in the Legislature and in its committees.

"(3) A fair, true and impartial account of public meetings, organized and conducted for public purposes only.

"(4) A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

The effect of appellant's contention would be to make a fair and impartial account of such matters as are privileged under the statute, unless actual malice is proved, privileged in fact, if such account is believed in good faith to be true, whether true in point of fact or not, provided only that there be no actual malice. This is what in the authorities is spoken of as conditional or qualified privilege. Such privilege, if the condition is shown, is as complete a defense as the absolute privilege of the statute and would, in substance and effect, add to the conditions under which such accounts are entitled to the privilege—that is, that they be fair, true, and impartial—the important alternative condition that they be believed in good faith to be true. We cannot believe that the Legislature intended by what is said in section 4 of the act, to wit, "that nothing in this act shall be construed to take away any existing defense to a civil action for libel" to so qualify the definition of privileged matter given in the preceding sections of the act. At the

time of the passage of the act, other matters than those referred to, when published in a newspaper without malice and upon reasonable grounds in good faith believed to be true, were privileged. We think that such matters are now so privileged, but we do not think that since the passage of the act the doctrine of qualified privilege as it existed prior thereto, as a defense to the action of libel can be invoked to protect appellant in the publication of an untrue account of such proceedings as are referred to in the statute, on the ground that the publisher honestly believed the statements to be true. The Legislature did not intend, when in the last section of the statute it preserved existing defenses, to practically destroy the limitations and conditions made essential by the other sections of the statute to the privilege declared to be a defense. This is evidently the view taken of the statute by the Court of Civil Appeals of the Fourth District in the case of Light Pub. Co. v. Lewy, 52 Tex. Civ. App. 22, 113 S. W. 575, in discussing the fourth subdivision of section 3 of the act on page 581. We can find no case arising under the statute referred to that sustains appellant's contention, and we do not think it is sound. The Supreme Court in Cranfill v. Hayden, 97 Tex. 544, 80 S. W. 609, discusses the question of conditional privilege as a defense to an action for libel, but nowhere refers to the statute which was passed after the cause of action arose in that case. The action was commenced before the passage of the act and by the express terms of section 4 it did not apply. Appellant requested several special instructions presenting this contention in different forms, all of which were refused, and the refusal is complained of in several assignments of error, all of which are overruled for the reasons indicated.

[12] Appellant requested a special instruction that it need only establish that the statements in the article were substantially true. If there had been any evidence to show that the statements, while not literally, were substantially, true, it would have been proper to instruct the jury as requested, but so far as appears from the record, as pointed out in appellant's brief, there was no attempt to show that the statements were either literally or substantially true, and there was no occasion for the charge.

[13] Appellant requested the court to give the following instruction: "The jury are further instructed that you cannot include in your verdict, and must exclude therefrom, all damages suffered by the plaintiff that resulted from any other publication than the one declared upon by the plaintiff in this case." The court refused to give the charge as asked, but did give it with the following qualification: "You will render no verdict against the defendant for damages except such, if any, as are naturally and proximately caused by its own wrongful action, but the fact that the action of another may have contributed to the injury and damage constitutes no defense in this case either to the action itself or the amount of the recovery." The charge as qualified by the addition made by the court presents correctly, we think, the law applicable to this issue. As thus given, the charge presented an intelligible whole, and is not subject to the objection that the charge requested was rendered unintelligible by the court's qualification.

[14] It is true, as contended by appellant, and as has been clearly settled in this state, that it is the right of a party litigant to have charges requested by him either given or refused as asked. Cotton Press Co. v. Bradley, 52 Tex. 602; Trezevant v. Rains, 25 S. W. 1095. But it was held by the Supreme Court in Mo. Pac. Ry. Co. v. Williams, 75 Tex. 9, 12 S. W. 837, 16 Am. St. Rep. 867, quoting from appellant's brief: "We, think, however, that when a modification is appended to a requested charge in such a manner as to show the precise charge asked, and the precise modification, and the whole is intelligible to the jury, that no injury resulted to the party making the request. The action of the court shows that the charge as requested is refused, and, if the modification be proper there is no ground for complaint." The action of the court in refusing the requested charge, except with the qualification referred to, presents no reversible error.

The only remaining assignment of error is as to the action of the court in refusing to grant appellant a new trial. The special ground set up in the assignment is that the occasion of the publication was conditionally privileged as a matter of law, and the verdict of the jury found there was no malice. What we have already said, we think, sufficiently disposes of this assignment.

We have carefully examined each of the assignments of error, and the several propositions thereunder, and in our opinion none of them presents sufficient grounds for reversing the judgment, which is therefore affirmed.

Affirmed.