[Civil No. 1666.   Filed June 4, 1919.]

[181 Pac. 373.]

## ARIZONA PUBLISHING COMPANY, Appellant, v. CHARLES W. HARRIS, Appellee.

1. PLEADING—DEMURRER—ADMISSION.—A demurrer admits all matters well pleaded.

2. LIBEL AND SLANDER — PUBLIC OFFICER.—Defamatory publications concerning an officer with respect to his office are actionable *per se* if untrue.

3. LIBEL AND SLANDER—LIBEL—CONSTRUCTION.—Words in a defamatory publication are to be construed according to their meaning and as it is believed they would be understood by those who read them, considered in the light of the connection in which they were used.

4. LIBEL AND SLANDER—DEFAMATORY PUBLICATIONS—DIRECT CHARGE. It is not necessary for a defamatory publication to be actionable that the charge should be made in direct or express terms, and insinuations may be as defamatory as direct assertions.

5. INSURRECTION—LIBEL AND SLANDER—LIBEL CONCERNING STATE ADJUTANT — "SEDITION."—A newspaper article stating that the Governor would demand the resignation of plaintiff, the adjutant-general, and that the demand was made by reason of reports of the adjutant-general concerning strikes which had been characterized as seditious, is libelous *per se*, as imputing a crime; for "sedition" is the raising of commotions and disturbances in the state or a revolt against legitimate authority.

6. LIBEL AND SLANDER — INNUENDO — NECESSITY.—When a libel is couched in language having a covert meaning not apparent on its face, it is necessary for a plaintiff to allege the libelous sense in which the words were used, but, where the language of a libelous article is not obscure and does not need an explanation, an innuendo is unnecessary and may be disregarded as surplusage.

7. LIBEL AND SLANDER—PRIVILEGE—ACTS OF PUBLIC OFFICERS.—The official acts of public officers may lawfully be made the subject of fair comment and criticism, not only by the press, but by members of the public, but charges importing a criminal offense or moral delinquency to a public officer cannot, if false, be privileged, though made in good faith.

8. LIBEL AND SLANDER—PRIVILEGE—NEWSPAPERS.—Publishers of newspapers have no peculiar right or privilege to attack public officers, and a false and defamatory charge is no more privileged when published by a newspaper than when published by a private individual.

9. LIBEL AND SLANDER—PRIVILEGE—CANDIDATES FOR OFFICE.—Publication of false statements about a candidate for public office is not privileged, and a newspaper which printed a false and defamatory charge concerning an officer cannot escape liability on the ground that the officer stood in the same position as a candidate, and that a publication, however false, was privileged if made in good faith and without malice.

10. LIBEL AND SLANDER—PRIVILEGE—MALICE.—Proof of actual malice on the part of the publisher of a libelous article prevents the publication from being privileged; this being so both as to public officers and as to candidates for such office.

11. LIBEL AND SLANDER—ACTIONS—EVIDENCE — MALICE.—In an action by the adjutant-general of a state for a libel which characterized his utterances as seditious, evidence *held* to warrant finding that the defendant newspaper in printing the charge was actuated by malice.

12. LIBEL AND SLANDER — ACTIONS — INSTRUCTIONS.—Where it was alleged that a newspaper article stated that a public officer had been guilty of utterances which might be characterized as seditious, and the article was libelous *per se*, it was the duty of the court to instruct the jury that, if they believed the evidence, plaintiff should recover.

13. TRIAL—INSTRUCTIONS — IGNORING ISSUES.—Where the publication complained of was libelous *per se*, an instruction that, if the jury believed the alleged libel was published as charged in the complaint, plaintiff was entitled to recover, is not erroneous as withdrawing from the jury the consideration whether the publication was false; the complaint having alleged its falsity.

14. TRIAL—INSTRUCTIONS—CURE OF INSTRUCTIONS BY OTHERS.—Though an instruction in a libel case charging the jury as to the effect of the libelous publication did not clearly show that it was a jury question, whether the article complained of was false, the error was cured by another instruction expressly stating that truth was a defense.

15. TRIAL—INSTRUCTIONS—REQUEST.—Where defendant is not satisfied with instructions on a defense, it is his duty to request more specific, definite and certain instructions.

16. APPEAL AND ERROR—REVIEW—PERSONS ENTITLED TO ALLEGE ERROR. Where a publication was libelous *per se,* and the judge properly instructed the jury to that effect, a further instruction submitting to them the question of the meaning of the publication, though conflicting with the first, was not prejudicial to defendant, and defendant, having been unsuccessful, cannot predicate error thereon.

17. LIBEL AND SLANDER—DAMAGES — PUNITIVE DAMAGES.—Where the publisher of a newspaper recklessly printed an article defaming a public officer, and there was no legal justification or excuse therefor, the publication being made in wanton disregard of the rights of the officer, the jury may infer malice and assess punitive damages.

18. LIBEL AND SLANDER — DAMAGES—AMOUNT—JURY QUESTION.—In a libel case the amount of damages is peculiarly within the province of the jury.

19. LIBEL AND SLANDER—EXCESSIVE DAMAGES.—Where the publisher of a newspaper printed a false article imputing to plaintiff, the adjutant-general of the state, seditious utterances, and at that time the United States was engaged in war with Germany, an award of six thousand dollars in favor of the adjutant-general cannot be deemed excessive or from its size to be the result of passion and prejudice on the part of the jury.

APPEAL from a judgment of the Superior Court of the county of Maricopa. R. C. Stanford, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

The plaintiff (appellee) recovered a judgment for damages in the sum of six thousand dollars against the defendant (appellant) in an action for libel. The defendant appeals from the judgment and the order overruling a motion for a new trial. The defendant owns and publishes a newspaper in the city of Phoenix of wide circulation in the state of Arizona, and other states in the Union, known as the "Arizona Republican." The charge made in the complaint is that the defendant maliciously published in the "Arizona Republican" of and concerning the plaintiff the following article:

"Resignation of Colonel Harris as Adjutant General Demanded in Letter by Governor Campbell.

"Thomas E. Campbell yesterday demanded the resignation of Adjutant General Charles W. Harris of the state of Arizona. The demand is that he tender his resignation to go into effect on August 1.

"Adjutant General Harris verbally stated to Malcolm Frazier, secretary of the Governor, that he would not resign.

"Governor Campbell states that on August 1, when the First Arizona goes into federal service, there will be no need of an adjutant general, but it is reported that the demand for the resignation was precipitated by certain reports made by Colonel Harris regarding strike situations, which reports have been characterized as 'seditious.' "

It is further alleged in the complaint that the plaintiff, at the time of the publication of said article, and for several years prior thereto, was the duly appointed and acting adjutant-general of the state of Arizona, and that by the use and publication of the said words the defendant intended to assert and intended to be understood as charging and asserting, and by the readers of said newspaper was understood as charging and asserting, that plaintiff, as such adjutant-general, had made certain seditious reports regarding the strike situation at various points in the state of Arizona. It is further alleged in the complaint that the article so published was false, malicious and scandalous, and was published through malicious motives, without probable cause, and for the purpose of vexing, harassing, injuring and degrading the plaintiff personally, officially and politically. Actual damages in the sum of five thousand dollars and exemplary damages in the sum of five thousand dollars are demanded in the complaint.

The defendant demurred to the complaint, which demurrer was overruled. By its amended answer the defendant admits the publication of the alleged libelous article, but "denies that the defendant intended to and did charge and assert, and intended to be understood as charging and asserting, that plaintiff, as such adjutant general, or otherwise, had made certain or any seditious reports regarding the strike situation, or in relation to any other matter. It denies that said publication of said news item set out as aforesaid by the plaintiff in his complaint was printed, published, and circulated by the defendant through malicious motives, or without probable cause, or for the purpose of vexing, harrassing, injuring, or degrading the plaintiff personally, officially, or politically, or otherwise.

"Defendant further says that it was at the date of said publication, and for some time prior thereto, known by the

public generally that the Governor of Arizona desired the vacation by plaintiff of the office of adjutant general, and had requested, or was about to request, the plaintiff to resign the same; that there was a controversy between the Governor of the state and the plaintiff as to the legal tenure of the office of adjutant general, and as to the power of the Governor to remove the plaintiff from that office with or without cause, and to appoint a successor to the plaintiff therein, all of which was involved in and constituted a public official proceeding, in which the public was concerned, and of which the public generally had the right and desire to be promptly, impartially, and accurately informed; that the defendant engaged in its business of publishing, among other matter, the news and accounts of public business by and through its agents and reporters in good faith, made inquiry at the proper official sources thereof for information concerning said public proceedings, and with a view of publishing the same for the information of the public; that upon such inquiry it was communicated to a reporter of defendant's said newspaper that the Governor had officially demanded of the plaintiff his resignation of the office of adjutant general to take effect on the 1st day of August; that the plaintiff had stated verbally to the private secretary of the Governor that he would not resign; that it was reported that such demand for the plaintiff's resignation of said office was precipitated by certain official reports and statements made by the plaintiff regarding strike and other situations, and that such reports and statements were by those who reported said statements characterized as 'seditious'; that said information was obtained and communicated to the defendant's reporter as public official transactions relating to public official proceedings; that in entire good faith, and with no knowledge that any part of said information was false, if in fact it were false, and without any malice whatsoever toward the plaintiff, in his official or private capacity, and without any purpose to injure, annoy, or harass the plaintiff, but actuated solely by a desire to give impartially and accurately the news of the public official proceedings relating to the matter, defendant did publish the news item of which a copy is set out in the complaint, in its issue of the Arizona Republican bearing date of July 29th, 1917, of the publication of which plaintiff complains.''

Messrs. Kibbey, Bennett & Jenckes, for Appellant.

Mr. A. S. Hawkins and Mr. James P. Lavin, for Appellee.

BAKER, J.  (After Stating the Facts as Above).—The defendant contends that the complaint does not state facts sufficient to constitute a cause of action, and therefore it was error to overrule the demurrer.  This claim is predicated upon the proposition that the publication was not libelous *per se*.  For the purpose of determining the question, all matters well pleaded must be taken as admitted, and hence in this case it must be held that the demurrer admits that the plaintiff was the adjutant-general of the state, and that the statements contained in the published article with respect to him were false and were published maliciously.

Defamatory publications of an officer with respect to his office are actionable *per se*, if untrue.  13 Am. & Eng. Ency. of Law, pp. 355, 356, and notes on same at pages 357–360; Townsend on Slander and Libel, pp. 221, 223, 232 et seq.; Newell on Slander and Libel, pp. 176–178; *Belo* v. *Fuller*, 84 Tex. 450, 31 Am. St. Rep. 75, 19 S. W. 616; *Houston Printing Co.* v. *Moulden*, 15 Tex. Civ. App. 574, 41 S. W. 381; *Jarman* v. *Rea*, 137 Cal. 339, 70 Pac. 216.

"Sedition" has been defined to be:

"The raising of commotions and disturbances in the state; it is a revolt against legitimate authority."  3 Bouvier's Law Dictionary, p. 3033 (Sedition).

The rule is well settled that the words in the publication are to be construed according to their ordinary meaning, and as it is believed they would be understood by those who read them, considered in the light of the connection in which they are used, and the subject matter of the article.  25 Cyc. 355; 13 Am. & Eng. Ency. of Law, pp. 347–353.

It is not necessary that the publication, to be actionable, should make a charge in direct or express terms:

"To maintain an action for libel or slander it is not necessary that the charge should be direct and positive; the imputation may be inferred from an indirect communication, as where defendant 'expresses a suspicion, or institutes a comparison, or delivers the words as matter of hearsay . . . or answer, or exclamation, or uses disjunctive or adjective words, or speaks ironically.'  Insinuations may be as defamatory,

as direct assertions, since the effect and tendency of the language used, and not the form, is the criterion." 25 Cyc. 360.

Having regard to these general principles of the law of libel, we are of the opinion that the language used in the publication is fairly susceptible of a construction which renders it libelous *per se,* and that it would be so understood by readers generally. The last sentence of the publication, " . . . but it is reported that the demand for the resignation was precipitated by certain reports made by Colonel Harris regarding strike situations, which reports have been characterized as 'seditious,' " is to our minds equivalent to the assertion that Colonel Harris had made reports which were seditious, and was, in effect, a charge against him of sedition. The imputation of crime is unmistakable in the language, and it seems altogether unreasonable to say that the expression conveys only an innocent meaning. There can be no doubt but that, had the charge been presented in a direct form, the article would have been libelous, and it is none the less libelous because the charge is stated in a form indirect or oblique.

" . . . A defamatory article which would be libelous *per se* if its matter was directly stated does not lose its quality in this regard because it is couched in the form of an interview with another person, or because it seeks to avoid its otherwise obvious character as a libel per se by the statement that it is reported or asserted or believed to be true." *Waite* v. *San Fernando Pub. Co.* (Cal.), 173 Pac. 591.

See *Gilman* v. *McClatchy,* 111 Cal. 606, 44 Pac. 241; *Edwards* v. *San Jose Printing & Pub. Soc. et al.,* 99 Cal. 431, 37 Am. St. Rep. 70, 34 Pac. 128; *Wilson* v. *Fitch,* 41 Cal. 363.

In *Edwards* v. *San Jose Printing & Pub. Soc. et al., supra,* the following language was held libelous *per se:*

"It is also reported that Edwards is to have charge of the sack."

In *Lundin* v. *Post Publishing Co.,* 217 Mass. 213, 52 L. R. A. (N. S.) 207, 104 N. E. 480, the supreme court of Massachusetts said:

"The mere fact that the charge against the plaintiff was not made by direct averment, but only by saying that such an allegation had been made, was not material; for the statement of unfounded charges is none the less actionable that it is

made only by way of repeating them as having been made by others.''

In *Houston Chronicle Pub. Co.* v. *Wegner* (Tex. Civ. App.), 182 S. W. 45, the court of civil appeals of Texas said:

''Nor does the fact that the false charge or statement made in said Chronicle simply purports to be a statement or charge made by another or other person, and that the Chronicle only so gave it, and that it neither itself asserted such charge to be true nor vouched for the truth thereof, relieve such statement of its libelous character. . . . ''

To say that the adjutant-general of the state had made seditious reports is to charge him with the raising of commotions and disturbances in the state, and with being a destroyer of public tranquillity—guilty of acts tending to the breach of public order and safety. The natural tendency of such a charge is to hold such officer up to hatred, scorn and contempt, and to beget an evil opinion of him in the minds of all right-thinking persons. An adjutant-general who makes seditious reports can neither be a loyal citizen nor a fit person to hold any office of trust or responsibility.

A copy of the libelous matter is set out in the complaint, and it is alleged that such matter was false and was maliciously published, and that the publication injured and damaged the character and reputation of the plaintiff. The complaint therefore states a cause of action, and the demurrer was properly overruled.

The innuendo set forth in the complaint was unnecessary, and may be disregarded, as surplusage. There can be no doubt that, when a slander or libel is couched in language having a covert meaning not apparent upon its face, it is necessary for a plaintiff not only to allege and prove the slanderous or libelous sense in which the words were used, but also that they were understood in the same sense by those to whom they were addressed. *Maynard* v. *Insurance Co.*, 34 Cal. 48, 91 Am. Dec. 672; *Andrews* v. *Woodmansee*, 15 Wend. (N. Y.) 232. But we are of the opinion that the present case does not fall within this rule. The language of the article is not obscure, and does not stand in need of an explanation. The common understanding of mankind will take hold of the published words, and at once, without difficulty or doubt, apply a libelous meaning to them. In such a case an

innuendo is not needed.    25 Cyc. 436; *Johnston* v. *Morrison,* 3 Ariz. 109, 21 Pac. 465.

For this publication the plaintiff had a right of action against the defendant for damages, unless it was true, or unless it was privileged. The undisputed evidence in the case establishes that the charge of sedition was absolutely false. Indeed, as we understand the record, the defendant makes no claim that Colonel Harris did in fact make any seditious reports to the Governor, but it is contended that the public at large was interested in the subject matter of the publication, and that the publication was made in good faith, without malice and from laudable motives, and was therefore qualifiedly privileged. This contention cannot be sustained. It appears from the evidence that at the time of the publication, and for some time prior thereto, it was generally known and understood by the public at large that the Governor of the state desired the vacation by the plaintiff of the office of adjutant-general, and had requested, or was about to request, the plaintiff to resign the same. There appears to have been a controversy between the Governor and the plaintiff as to the legal tenure of the office of adjutant-general, and as to the power of the Governor to remove the plaintiff from that office with or without cause, and to appoint a successor to the plaintiff, all of which it is claimed was involved in and constituted a public official proceeding, in which the public was concerned and of which the public generally had the right and desire to be promptly, impartially, and accurately informed. The immediate occasion for the publication of the article in question arose out of an interview between the Governor's secretary and the editor of the defendant newspaper. The account of this interview, as given by the editor of the paper, is as follows:

"Q. From whom did you get your information? A. Mr. Malcolm Frazier, Governor Campbell's secretary.

"Q. You knew that Mr. Frazier was secretary of the Governor? A. Yes.

"Q. And there was a statement made to you? A. Mr. Frazier brought the letter to the Republican office one Saturday evening.

"Q. What letter was that? A. The letter requesting the resignation of the adjutant general.

"Q. Then you may state what was said about it. A. The letter, I believe, gives his reasons for asking the resignation, the fact that the National Guard was about to be merged into the federal army, and that there would then be no need for the services of an adjutant general. I asked Mr. Frazier what was back of it; that didn't seem to be a sufficient reason for vacating the office; and he told me that the request had been precipitated by certain statements and reports that Col. Harris had made regarding the strike situation, and, I think, on account of a letter with reference to the police reserves, and Mr. Frazier said that those reports and statements were seditious. He didn't quote me the nature of the reports and statements."

It is unquestionably the right of the press to freely discuss, criticise, or comment fairly upon the acts or omissions of a public officer of the county, state or nation, but it is not permitted, under the guise of criticising official acts, to maliciously defame the character of the officer. The general rule relating to public criticism of public officers is briefly stated as follows:

"The official acts of public officers may lawfully be made the subject of fair comment and criticism, not only by the press, but by members of the public, but the prevailing rule is that charges importing a criminal offense or moral delinquency to a public officer, cannot, if false, be privileged, though made in good faith, and this though the charge relates to acts of the officer in the discharge of his official duties" 18 Am. & Eng. Ency. of Law, 2d ed., p. 1041; *Bee Publishing Co.* v. *Shields,* 68 Neb. 750, 94 N. W. 1029, 99 N. W. 822.

The supreme court of Pennsylvania, in the case of *Neeb* v. *Hope,* 111 Pa. 145, 2 Atl. 568, says:

"An occasion of privilege will not justify false and groundless imputations of wicked motives or of crime. The conduct of public officers is open to public criticism, and it is for the interest of society that their acts may be freely published with fitting comments or strictures. But a line must be drawn between hostile criticism upon public conduct and the imputation of bad motives or of criminal offenses, where such motives or offenses cannot be justly and reasonably inferred from the conduct."

It is the truth when published, and not falsehood, that is privileged. In the case of *Belknap* v. *Ball,* 83 Mich. 583, 21 Am. St. Rep. 622, 11 L. R. A. 72, 47 N. W. 674, it is said:

"Publications of falsehoods are never privileged. No public interest can be subserved by their publication and circulation. If statements, though false, are published in good faith, and with an honest belief of their truth, the damages may be reduced to a minimum. No other rule will properly protect the freedom of the press and the rights of individuals."

Publishers of newspapers have no more right to give currency to false charges than other persons. They have no peculiar rights or privileges in this respect. *Sheckell* v. *Jackson,* 10 Cush. (Mass.) 25, 26; *Burt* v. *Advertiser Newspaper Co.,* 154 Mass. 238, 13 L. R. A. 97, 28 N. E. 1.

But it is argued that a public officer stands in the same position as a candidate for public office, and that no recovery can be had by a candidate for a public office for a publication however false, if such publication be made honestly, in good faith, and without express malice. It must be conceded that there are two radically diverging views of the law of privilege or criticism as applied to a candidate for office. In some jurisdictions it is held that all matters, true or false, having a bearing on the fitness of a candidate, may be published without liability, if it be shown that they were published without malice, in good faith, and in the honest belief that the facts were true. The case cited by counsel for the defendant (*Briggs* v. *Garrett,* 111 Pa. 404, 56 Am. Rep. 274, 2 Atl. 513), is sometimes quoted to sustain this doctrine. See, also, *Coleman* v. *McLennan,* 78 Kan. 711, 130 Am. St. Rep. 390, 20 L. R. A. (N. S.) 361, 98 Pac. 281. But it seems to us that the better view, supported by the better reasons, and the greater weight of authority, is that published false statements about a candidate for public office are not privileged. 25 Cyc. 402, 405, and notes; Newell on Slander and Libel, 3d ed., pars. 633, 636; *Post Publishing Co.* v. *Hallam,* 59 Fed. 530, 8 C. C. A. 201; *Donahue* v. *Star Publishing Co.,* 4 Penne. (Del.) 166, 55 Atl. 337; *Jones* v. *Townsend's Admx.,* 21 Fla. 431, 58 Am. Rep. 676; *Bronson* v. *Bruce,* 59 Mich. 467, 60 Am. Rep. 307, 26 N. W. 671; *Upton* v. *Hume,* 24 Or. 420, 41 Am. St. Rep. 863, 21 L. R. A. 493, 33 Pac. 810; *Forke* v. *Homann,* 14 Tex. Civ. App. 670, 39 S. W. 210.

The plea of privileged publication cannot prevail in this case for another reason. The authorities all agree that proof of actual malice on the part of the publisher of a libelous article prevents the publication from being privileged. This rule of law applies equally to one occupying a public office as well as to a candidate for such office. 17 R. C. L. 342, and cases cited; 25 Cyc. 411, and note; *Sweeney v. Baker*, 13 W. Va. 158, 31 Am. Rep. 757; *San Antonio Light Publishing Co. v. Lewy*, 52 Tex. Civ. App. 35, 113 S. W. 574; *Hamilton v. Eno*, 81 N. Y. 116; *Martin v. Paine*, 69 Minn. 482, 72 N. W. 450; *Atwater v. Morning News Co.*, 67 Conn. 504, 34 Atl. 865; *Myers v. Longstaff*, 14 S. D. 98, 84 N. W. 233.

There is evidence in the record tending to prove that the defendant newspaper upon another occasion charged the plaintiff in its columns with having made seditious reports. The editor of the newspaper testified substantially that he knew that the Governor's secretary, with whom he held the interview, was unfriendly to the plaintiff, and that he realized that the publication of the article would injure and damage the plaintiff. He further testified that he endeavored to communicate with the plaintiff over the phone for the purpose of getting a statement from him before publishing the article, and failed, but that any statement that the plaintiff might have made would not have changed the article, and that he was determined to print it the next morning as a matter of news, and that the newspaper would not have retracted the article if the plaintiff had requested that it be done. These facts afforded a sufficient basis from which the jury was authorized to draw an inference of malice.

The court charged the jury to the effect:

" . . . If the jury believe from the evidence that the alleged libel was published by the defendant, as charged in the complaint, then the plaintiff is entitled to recover."

It is claimed that this instruction was error, because it withdrew from the jury any consideration of whether the article was or was not libelous and whether the statements in the article were true or not. We have held, and do hold, that the language of the publication was of itself defamatory, and therefore it was the province and duty of the trial judge to so instruct the jury. 25 Cyc. 542; *Tonini v. Cevasco*, 114 Cal. 266, 46 Pac. 103; *Van Vactor v. Walkup*, 46 Cal. 124.

Nor do we think that the charge withdrew from the jury the consideration whether or not the matter contained in the publication was false. The complaint alleged that the defamatory matter published was false and untrue, and we think the words ''as charged in the complaint,'' contained in the instruction, fairly conveyed to the minds of the jury that they were to pass upon the question, whether the matter published was true or false. Furthermore, in another instruction, the judge informed the jury that in any action for libel it is always a good and sufficient defense to show that the statements alleged to be libelous are true, and in yet another instruction the jury were told that, ''if the defendant falsely charged the plaintiff,'' etc. If the defendant desired a fuller or more specific instruction upon the issue, it should have requested the court to give one more specific, definite, and certain. 38 Cyc., pp. 1694, 1695.

A further complaint is made that the instruction just quoted conflicts with another instruction whereby the court submitted to the jury the determination of the meaning of the publication. It was error to give the last instruction, but such error was not prejudicial to the defendant. If the verdict had been for the defendant, the plaintiff might have complained of the instruction, but, the verdict being for the plaintiff, the defendant cannot complain, unless it is true that the language of the publication is not defamatory, a proposition that cannot be sustained, as we have already held. 25 Cyc. 543, and note; *Tonini* v. *Cevasco, supra.*

It is argued by the defendant that the verdict of the jury was contrary to the law, in so far as it undertook to assess punitive damages against the defendant for being actuated by express malice in making the publication complained of. We have already pointed out evidence in the record from which the jury might reasonably have concluded that the publication was prompted by actual malice. From that evidence alone the jury was authorized to find punitive damages against the defendant. In addition to this evidence, it appears from the testimony that the publication was made without any reasonable inquiry as to its truth, and that had such inquiry been made, the falsity of the same would have been disclosed. The jury might well have concluded that the publication was recklessly made, without legal justification or excuse, and in a spirit of wanton disregard to the rights of

plaintiff. Under the circumstances the jury was authorized
to infer malice from the publication: *Cotulla* v. *Kerr,* 74
Tex. 89, 15 Am. St. Rep. 819, 11 S. W. 1058; *Forke* v.
*Homann, supra; Mayo* v. *Goldman,* 57 Tex. Civ. App. 475,
122 S. W. 449; *Ellis* v. *Garrison* (Tex. Civ. App.), 174 S. W.
962; *Houston Chronicle Pub. Co.* v. *McDavid* (Tex. Civ.
App.), 157 S. W. 224; *Reid* v. *Sun Publishing Co.,* 158 Ky.
727, 166 S. W. 245.

In *Courier-Journal Co.* v. *Sallee,* 104 Ky. 335, 47 S. W. 226,
the court said:

"If, as a matter of fact, the words published were false, and
tended to the injury of the plaintiff, and were published reck-
lessly, even without special ill will, the defendant is equally
guilty, and punitive damages may be recovered."

The defendant insists that the verdict is plainly the result
of prejudice and passion, and is excessive. So many con-
siderations enter into the awarding of damages by a jury in a
libel case that the courts approach the question of the exces-
siveness of a verdict in such cases with great reluctance.
The question of damages for a tort, especially in a case of
libel or slander, is peculiarly within the province of the jury,
and unless the damages are so unconscionable as to impress
the court with its injustice, and thereby induce the court to
believe that the jury were actuated by passion, prejudice or
partiality, it rarely interferes with the verdict. It is not for
us to say that, had we been assessing the damages, we would
have given a less amount. It is the judgment of the jury,
and not the judgment of the court, which is to assess the
damages in actions for personal torts and injuries. In our
opinion, this is a case in which the jury were clearly justified
in giving both compensatory and punitive damages, under
well-settled principles of law, and, considering the character
of the plaintiff, the office which he held, the large circulation
of the defendant's paper, and the treasonable nature of the
charge, and considering also the fact that at the time of the
publication the United States government was at war with
the Imperial Government of Germany, and that a charge of
sedition at such a time would probably result in greater dam-
age to the plaintiff than if made in time of peace, we do not
feel that we would be justified in setting aside the verdict
on the ground of its being excessive.

No serious or reversible error appearing in the record, the judgment is affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.

---

The question of privilege as affected by extent of publication of libel and slander is discussed in notes in 20 **L. R. A. (N. S.)** 361 and **L. R. A.** 1915E, 131.